## In re SUGAREK.

No. 87052.

District Court, N. D. California, S. D.

Dec. 8, 1947.

Lloyd H. Garner, of San Francisco, Cal., Naturalization Examiner for Department of Naturalization.

Robert L. Ward, of Oakland, Cal., for petitioner.

GOODMAN, District Judge.

Petitioner is applying for naturalization as the spouse of an American citizen pursuant to the provisions of Section 312 of the Nationality Act of 1940, 8 U.S.C.A. § 712.

Section 312 provides as follows:

"An alien, whose spouse is (1) a citizen of the United States, (2) in the employment of the Government of the United States, or of an American institution of research recognized as such by the Attorney General, or an American firm or corpora-

tion engaged in whole or in part in the development of foreign trade and commerce of the United States, or a subsidiary thereof, and (3) regularly stationed abroad in such employment, and who is (1) in the United States at the time of naturalization, and (2) declares before the naturalization court in good faith an intention to take up residence within the United States immediately upon the termination of such employment abroad of the citizen spouse, may be naturalized upon compliance with all requirements of the naturalization laws, with the following exceptions:

"(a) No declaration of intention shall be required; and

"(b) No prior residence within the United States or within the jurisdiction of the naturalization court or proof thereof shall be required. Oct. 14, 1940, c. 876, Title I, Subchap. III, § 312, 54 Stat. 1145."

The evidence on the hearing disclosed the following: Petitioner is a 25 year old native of Australia, who married Charles L. Sugarek, in Sidney, Australia, on July 4, 1944, at a time when he was on leave in Australia from his ·duties as a Captain in the United States 5th Airforce then in New Guinea. Upon cessation of hostilities, Captain Sugarek and his petitioner wife returned to the United States, where he and petitioner lived on and off for a period of approximately two years. During that time Captain Sugarek, still in the armed forces, undertook training and schooling for the purpose of assuming duties with the Intelligence Corps of the United States Army of Occupation in Korea. He was dispatched to Korea from the United States on May 9, 1947 to assume a tour of duty of 30 months there, as an Agent of the Counter Intelligence Corps attached to General Headquarters of the American Army of Occupation in Korea. His appointment carried with it an obligation on his part to remain in Korea at least 30 months. As part of his training and schooling in the United States for this purpose, he was required to learn the Japanese language. As of the date of the hearing, Captain Sugarek was on duty in Korea and had secured permission for his wife petitioner to join him and reside with him in Korea during the period of his tour of duty there.

The question presented is whether or not Captain Sugarek is in the employ of the government of the United States and "regularly stationed abroad" in such employment.

The naturalization examiner opposes the petition upon the ground that Captain Sugarek is not "regularly stationed abroad." It is contended by the examiner that the presence abroad of Captain Sugarek is not "regular" in the sense that it is a normal, usual, habitual, customary or fixed position of his employment and further that military service abroad in a general sense is not "regular" but rather is transitory and temporary in character.

I am unable to accept this view of the meaning of the Statute.

The word "regular" as applied to employment is considered to be "that which is arranged," "not subject to unexplained or irrational variation," "that which is orderly." In decisions under Workmen's Compensation Acts, where questions, analogous to that here in issue, are frequently considered, the term "regular" is accepted as an antonym of "casual." See 36 Words and Phrases, Perm.Ed. page 657 et seq. The scope and purpose of employment is the principal factor upon which its "regularity" depends, rather than its duration. A continuing engagement to serve at such times as particular and essential service may be needed, is said to be the dividing line between "regular" and "casual." McSherry v. City of St. Paul, 202 Minn. 102, 227 N.W. 541, 545.

When the Nationality laws were being codified in 1940, the President's Committee on Codification recommended a more restrictive provision than the section which became § 312. Only government employees were included in the Committee's proposed provision. But the Section as adopted extended its benefits to spouses of employees of certain private enterprises.

Thus it is clear that Congress had in mind that the spouses of substantial numbers of both private and government employees, who were regularly conducting business for their employers abroad, should have the benefits of § 312. It is also evident, that .it was not the Congressional intent that the

1000

business abroad should be permanent or last forever. For the Section requires the petitioner spouse to declare "before the naturalization court in good faith and intention to take up residence within the United States immediately upon the termination of such employment abroad of the citizen spouse." It seems almost obvious that in using the language "regularly stationed," Congress was not intending to define employment either in terms of duration of time or in terms of civilian as opposed to military service.

The contention of the examiner that military service abroad is necessarily of an irregular nature and that the "regular station" of military men is in the United States is not, in my opinion, a correct viewpoint from which to appraise the purpose and meaning of § 312. Nothing in the statute discloses an intent to exclude military service from the reach of the term "employment." Nor is there any justification for inferring that no military service abroad is "regular." The employment of Captain Sugarek is not as a soldier during the period of hostilities. The functions of the forces of occupation are civil as well as military in character. In fact the aims and purposes of our so called "occupation" forces, have been publicly stated by the executive to be greatly broader in character than the orthodox functions of a purely military police force temporarily preserving order.

I am convinced that the legislative intent was to permit the naturalization of spouses, where employment abroad is in good faith, substantial in character, pursuant to arrangement, and of a steady and orderly nature as a part of a prescribed and fixed service, as distinguished from a type of employment which involves only some casual or temporary visit to a foreign country.

The evidence here clearly shows that Captain Sugarek voluntarily schooled himself for a special type of duty abroad in a special branch of the United States armed services. The nature and scope of his employment is not casual but of a fixed and regular character. Both the preliminary training he underwent and the specialized nature of his duties make this clear. Furthermore he was authorized to establish and maintain a place of abode in Korea to which the authorities have permitted him to bring his wife.

Under these circumstances, to interpret the statute in the manner contended for by the naturalization service, would be unjust and contrary to Congressional intent.

The petition is granted.