THE CHICAGO LUMBER AND COAL COMPANY, *Appellee,* v. J. E. SMITH, *Appellant.*

No. 16,728.

### SYLLABUS BY THE COURT.

1. PRACTICE, SUPREME COURT—*Assignments of Error.* An assignment of error that the court erred in the judgment which it rendered merely says the judgment is wrong, and does not specify any error within the meaning of rule 9 of this court.

2. MECHANIC'S LIEN — *Subcontractor — Notice — Description of Property.* The statute providing that any person who under a subcontract with the contractor furnishes material for an improvement on real estate may obtain a mechanic's lien (Civ. Code, § 651) does not require that the subcontractor should know the exact description of the property to be improved. It is sufficient if his contract relate to the betterment of a particular estate or the estate of a particular person.

3. —— *Same.* A contractor went to the office of a lumber company and stated to the company's agent that he had "Jesse Smith's contract" and wanted material. The two went out into the company's yard and looked over its stock, and thereafter the company furnished the contractor material as needed, which was used in the improvement of Smith's lots. *Held,* the destination of the material was sufficiently indicated to entitle the company to a lien.

4. —— *Subcontractor—Notice—Number or Kinds of Structures.* In the case stated it was not necessary that the sub-

Lumber Co. v. Smith.

contractor should know either the number or the kinds of structures contemplated in order that his contract might furnish the basis for a lien.

5. ———— *Single Lien—Different Forms of Improvements.* A subcontractor furnishing material under a single and entire contract with the contractor is entitled to a single lien for all the material furnished, irrespective of the number of forms the improvement takes or the number of contiguous lots into which the improved tract is divided.

6. ———— *Same.* In the case stated in paragraph 3 the contractor's original contract with the owner provided for the erection of a house only. Afterward a contract was made for the construction of walks around the house and a sidewalk in front of the lots on which the house was situated. *Held,* the subcontractor had the right to continue to furnish material under his own single and entire contract until the contractor's requirements were satisfied and then file a single lien for the whole account.

Appeal from Gove district court. Opinion filed March 11, 1911. Affirmed.

*A. Gilkeson,* for the appellant.

*Park B. Pulsifer,* and *Charles L. Hunt,* for the appellee.

The opinion of the court was delivered by

BURCH, J.: The Chicago Lumber and Coal Company furnished material to Colby, a contractor with J. E. Smith, which was used in the improvement of lots one, two, three and four, block eleven, in Grainfield, owned by Smith. The improvements consisted of a house, cement walks around the house, and a sidewalk in front of the lots. The lumber company filed a subcontractor's lien to secure payment of a balance due upon the purchase price of the material it furnished. In an action brought for the purpose the lien was foreclosed, and Smith appeals.

Two assignments of error are made: That the court erred in overruling a demurrer to the petition, and that

the court erred "in rendering the judgment it rendered."

More than a year elapsed between the ruling on the demurrer and the taking of the appeal. (*Bank v. Harding*, 65 Kan. 655.) The abstract recites that a motion for a new trial was filed, but the grounds are not stated, and the denial of the motion is not assigned as error. (*Gas Co. v. Dooley*, 73 Kan. 758.) The assignment that the court erred in rendering the judgment which it rendered merely says the judgment is wrong, and does not specify any error. (Rule 9 of this court; *Brown v. Rhodes*, 1 Kan. [Dass. ed.] 339; *Green v. Dunn*, 5 Kan. 254, 262; *Gamble v. Hodges*, 17 Kan. 24.) Consequently there is nothing for the court to consider. However, a few matters discussed in the appellant's brief will be noticed.

It is said there is no evidence to sustain any lien. Colby went to the office of the lumber company and there had a conversation with the company's agent, the effect of which appears from the following testimony:

"Ques. Do you remember the occasion of J. E. Smith building a house on some lots in Grainfield? Ans. I do.

"Q. Did you have any arrangement with Mr. Colby on behalf of your company for the furnishing of materials to construct that building? A. Well, he just merely came and got it about as he wanted it. There was no special arrangement.

"Q. What was the first talk you had with Mr. Colby with reference to furnishing materials for the building? A. He came to the office and said he had a contract to build this Smith house. He wanted material; we went out into the yard and looked over the stuff, and that was about all there was to it. He came and got it as he wanted it.

"Q. Mr. Reynolds, when Mr. Colby arranged to purchase this stuff from you, was the talk limited to a house, or did it include both a house and a sidewalk? A. He did n't say how much stuff he was going to get; there was no limit to it. The sidewalk was not mentioned.

"Q. What did he say he was going to build? A. I

don't know that he told me.    He said he had Jesse Smith's contract."

The material furnished under these circumstances was used in the manner stated above.   Smith was erecting no other building in Grainfield, and Colby had no other contract, at that time.   This evidence was ample to sustain a lien.

"Where materials are furnished and placed in a building, if there be nothing showing a different intention, a jury would be warranted in finding that they were furnished to be used in such building.   So if it appear that materials furnished were used in the erection of the building on which a lien is claimed, unless it is shown that they were intended for another purpose, it will be presumed that they had been contracted for to be used in the building." (*Deatherage v. Henderson,* 43 Kan. 684, 688.)

It was not essential that Colby should describe or that the lumber company's agent should know on what lots the structure was to be erected.

"It is not essential, however, that there should be a contract specifically describing the lots or building, nor that Howell Brothers should have known the exact location of the same." (*Wilson v. Howell,* 48 Kan. 150, 152.)

Nor was it essential that the lumber company's agent should know the precise character of the contemplated improvement.   It was enough for him to know of the original contract and to know the material was to go to the betterment of Smith's estate.

"The statute provides that any person who shall furnish any such material under contract with the contractor may obtain a lien.   This means more than that an ordinary contract shall exist between the seller and purchaser that the purchaser shall pay the contract price; it means that the subcontractor shall contract with reference to the original contract; that is, he must have knowledge of such original contract, and that the material to be furnished is to go to the

betterment of some particular estate." (*Manufacturing Co. v. Best,* 63 Kan. 187, 192.)

The expression usually is that the subcontractor must furnish the material with the understanding that it is to be used in a particular building. (*Sturges v. Green,* 27 Kan. 235; *Wilson v. Howell,* 48 Kan. 150, 152.) That, however, is merely one way of stating the principle involved. The principle is satisfied if the understanding be that the material is to be used in making an improvement  for a particular person, or upon a particular tract.

It is said there is no evidence to sustain a lien for any of the walks, because they were not mentioned. This point is covered by the observations already made. The subcontractor is not obliged to know whether the material he furnishes goes into a single structure, a principal structure with appurtenances, or several separate structures. If the material be furnished and used for the betterment of a particular estate, under a contract with the contractor, the statute is satisfied. (Phillips, Mech. Liens, 3d. ed., § 126.)

It is said that the single lien filed was ineffectual. Since the lumber company's contract was single and entire, it was entitled to file a single lien for all the material furnished, irrespective of the number of forms which the improvement took and irrespective of the number of contiguous lots into which the improved tract was divided. Thus, in the case of *Carr v. Hooper,* 48 Kan. 253, material was furnished and labor performed for plastering five houses, building five chimneys and constructing five cisterns. A single lien statement containing a list of the items of material and labor furnished was sustained. In the case of *Mulvane v. Lumber Co.,* 56 Kan. 675, several buildings were erected on several contiguous lots constituting one tract. A single lien was allowed.

The contractor's original contract with the owner

Lumber Co. v. Smith.

covered the house only. The contract for the walks was made afterward. Hence it is said there can be no lien for the walks. Colby at all times occupied the relation of contractor to the owner. Whether that relation was sustained through an original contract alone, an original contract with subsequent modifications, or successive contracts, was not important. He could make a subcontract. The subcontractor's rights accrue under his own contract duly made with a contractor. In this case the subcontract was single and entire, and under it the subcontractor had the right to continue to furnish material until the contractor's requirements were satisfied and then file a single lien for the whole account.

In the case of *The Jones & Magee Lumber Co. v. Murphy et al.*, 64 Iowa, 165, a contractor built a house, and afterward, under a subsequent contract, a porch to the house. A subcontractor furnished the material for both structures, and the question was whether his notice of a lien was served in time. The court said:

"We think that the plaintiff very properly concluded that one notice was sufficient for all, and that it had thirty days from the furnishing of that item of lumber which was the last of all. Where a single building is erected by one contractor, though, as often happens, under more than one contract, we think that it would be a great hardship upon the subcontractors to require them to take notice of, and bear in mind, at their peril, precisely where, in the construction of the building and use of material, one contract ends and the other begins. If they could watch the progress of the work day by day with the contractor's contracts in their hands, they probably could not always determine the facts requisite for their protection. Materials are bought in advance of the actual work in which they are used, and frequently, no doubt, are changed and mixed beyond identification. We think that the notice was served within the proper time." (p. 167.)

The foregoing disposes of the principal questions argued in the appellant's brief. As indicated at the

beginning, any consideration of the merits of the case is gratuitous. Therefore the discussion will not be extended to matters of minor importance.

The judgment is affirmed.