WARNER COMPANY, a corporation of the State of Delaware, v. LEEDOM CONSTRUCTION CO., a corporation of the State of Delaware, owner or reputed owner; and MASONSTEEL CONSTRUCTION COMPANY, a corporation of the State of Delaware, contractor.

---

(*October* 28, 1952.)

CAREY, J., sitting.

*Herbert L. Cobin* for plaintiff.

*John VanBrunt* and *Clyde M. England, Jr.,* (of Killoran and VanBrunt) for Leedom Construction Co.

No appearance for Masonsteel Construction Company.

CAREY, J.:

This case involves an interpretation of Section 3324 *Revised Code* 1935, which is a part of the Mechanics' Lien statute. That section creates the right of lien. It requires a materialman to file a statement of claim within ninety days after the last delivery of materials in order to obtain a lien against the property. It also sets out what information must be included in the statement. It contains the following language:

"Any judgment obtained upon such claim, as hereinafter provided, shall become a lien upon such building, house or structure, and upon the ground upon which the same is situated, erected or constructed, and shall relate back to the day upon which said work and labor was begun, or the furnishing of said material was commenced. In every case in which one claim for work and labor or materials shall be filed by the same person or persons against two or more buildings, houses, or structures owned by the same person or persons, for building, altering or repairing two or more buildings or structures owned by the same person or persons, the claimant shall, at the time of filing such joint claim, designate the amount which he claims to be due to him on each of such buildings, houses or structures".

The principal legal question raised is whether this latter provision requiring an allocation of the debt among buildings applies to the plaintiff under the facts of this case. If it does, the question then arises whether a proper apportionment has been made by this plaintiff. A third issue which concerns an inference to be drawn from the basic facts need not be decided.

Leedom was the owner-developer of a dwelling project known as Leedom Estates at Farnhurst, near Wilmington. It divided a tract of land into 87 building lots and recorded a plot thereof in the recorder's office. With Franklin Builders, Inc. as general contractor, Leedom first built a sample house, and later erected additional dwellings as sales were made. Masonsteel supplied the labor and materials for certain parts of the dwellings, including cellars, foundations, sidewalks, roofs, interior partitions, floors, ceilings and sash. Masonsteel purchased many of the necessary materials from Warner. The present action is to enforce a lien for the unpaid part of the price of these materials.

The first delivery by Warner to the project for Masonsteel was on September 19, 1949. Bills were submitted to Masonsteel after the end of each month. By payments made in November and December, the account was paid up to December 1, 1949. As of April 1950, plaintiff's ledger shows a credit in the exact

amount of the December bill. The ledger was marked "cash on acct.—Leedom—Dec.". Under date of May 15, 1950, appears this entry opposite a credit: "cash on acct.—Jan. Leedom Bal. 478.97". On May 18, there is one credit of 478.97 marked "cash on acct.— Jan. in full Leedom" and another credit of 521.03 marked "cash on acct.—Feb. Leedom". On June 27, credits totaling 1,874.53 are marked "cash in full Feb.—Leedom". Certain subsequent payments are credited "cash on acct.—Leedom job March acct." The amounts of all these credits are undisputed and, in view of the entries made, it is clear that the various payments made were credited against the oldest items of the account, and that the parties treated them as paying the bills in full through February plus a part-payment on the March items.

In June 1950, the balance due was so large that plaintiff insisted upon a new arrangement. Representatives of Warner, Masonsteel and Franklin met on June 20 and agreed, *inter alia*, that Warner would continue to supply materials as and when ordered by Masonsteel, sending the bills weekly to Franklin, and that Franklin would pay them, deducting the amounts thereof from the weekly sums due from Franklin to Masonsteel. This plan was followed until the job terminated in November following, and all materials delivered by Warner after June 20th under this arrangement were fully paid for.

The statement of claim herein was filed in February 1951. The argument is made that the arrangement of June 20th constituted a new and separate contract in that Warner was thereafter no longer selling to Masonsteel but to Franklin, that the two contracts cannot be "tacked" for the purpose of obtaining a lien for Masonsteel's bill, and that the time limit for filing the statement in this case therefore expired ninety days after June 20. In support of this argument, defendant cites *Hensel v. Johnson*, 94 *Md.* 729, 51 *A.* 575; *Rubino v. Tranor*, 152 *A.* 647, 8 *N. J. Misc.* 815; *Kendallville Lumber Co. v. Adams*, 93 *Ind. App.* 141, 176 *N. E.* 555. Plaintiff denies that the arrangement constituted a new contract and avers that it was a continuation of the old one, modified only by a guaranty on Franklin's part. I re-

frain from deciding the point in view of my conclusions upon the other issues raised.

Turning now to the first legal question mentioned above, we find the parties in disagreement concerning the applicability to this case of the statutory requirement of apportionment. Plaintiff's position is that, where materials are furnished under a continuous running account to a single building development, Section 3324 does not require a designation of the amount due upon each of the buildings in the development. Concededly, many of the materials furnished by plaintiff were delivered to the project in large quantities and later used by Masonsteel as it saw fit; as to them it is impossible for plaintiff to make an allocation. It is urged that in fact there is no amount due on each structure, but that the whole debt is due on the whole development as a single unit. In support of this theory, counsel cites *Warren v. Hopkins*, 110 *Cal.* 506, 42 *P.* 986, and other California cases; *Maryland Brick Co. v. Spilman*, 76 *Md.* 337, 25 *A.* 297, 17 *L. R. A.* 599, and other Maryland decisions; *United States Building and Loan Association v. Midvale Home Finance Corp.*, 86 *Utah* 506, 44 *P.* 2d 1090 and another Utah case; and *Golden Belt Lumber Co. v. McLean*, 138 *Kan.* 351, 26 *P.* 2d 274.

As Judge Rodney pointed out in *Iannotti v. Kalmbacher*, 4 *W. W. Harr.* 600, 156 *A.* 366, caution must be observed in the acceptance of authorities in other jurisdictions in mechanics' lien cases. One reason for such caution is the wide divergence in the forms and purposes of such statutes in different states. Another reason is that, in contrast to our own precedents, most decisions construe such acts liberally in favor of the lien claimant. This Court has consistently applied a rule of strict construction, especially as to the obtaining and existence of the lien, considering the statute to be in derogation of the common law rather than remedial legislation. For example in *Durney v. Diguglielmo*, 5 *Boyce* 289, 92 *A.* 850, the Court sustained exceptions to a statement of claim which did not designate the amount due on each of two buildings on adjoining lots. Similar action was taken in *Newark Lumber Co. v. Continental-Diamond Fibre*

*Co.*, 5 *W. W. Harr.* 60, 157 *A.* 729. Other opinions have observed the same strictness in construing other parts of the statute.

As was pointed out in *Hollingsworth v. Continental-Diamond Fibre Co.*, 6 *W. W. Harr.* 303, 175 *A.* 266, 268, under the language of the Delaware statute the very right to obtain a lien is subject to certain "restrictions, limitations and qualifications". One of these is the necessity of including in the statement of claim a designation of the amount claimed to be due on each building or structure, if there be more than one. The requirement is positive and substantial, and failure to observe it is fatal to the existence of the right. This philosophy is in direct contrast to the view, followed by many Courts, that a requirement of apportionment is directory rather than mandatory.

The New Jersey Court has stated the purpose of this particular provision in *Board v. Freedman*, 99 *N. J. Eq.* 351, 131 *A.* 913, 914, as follows:

> "The purpose of the statute, as is pointed out in the cited case, is to inform all persons who have varied interests in any of such buildings and the curtilage upon which it is (or is being) erected as to the extent to which each of said buildings and curtilages is claimed to be liable to the lien of the materialmen—that is, what proportion of the whole amount of the contractor's debt has been legally apportioned to each of such buildings and curtilages."

In a case like the present one, that purpose would be defeated by holding allocation unnecessary. The houses were erected for sale as individual units and, in fact, many were sold before this action was instituted. Those purchasers, for example, regardless of the nature of plaintiff's contract with Masonsteel, are still entitled to know the amount properly chargeable to their respective homes, though their rights in the realty may be inferior to plaintiff's. Nothing in the Delaware statute suggests that apportionment is not required if the materialman cannot make an allocation or if the materials are furnished under a single running account; and no Delaware case has so held. The

statutory provision being mandatory, a materialman's inability to substantially comply with it simply means that he cannot obtain a lien, for the Court has no power to create exceptions where none exists.

█ Plaintiff argues, however, that it has complied with the requirement in the statement filed, for it has listed certain amounts claimed to be due on each house. These figures, according to the evidence, were computed by Mr. Peters, President of Masonsteel, in this manner: he found that the unpaid balance is 41% of the cost of all purchases made by Masonsteel from Warner for the project. He then computed the value of Warner's materials used in each and every house. He next multiplied that figure by 41%. The results thus obtained are the various amounts claimed to be due on each house.

The error in this method is apparent, since the entire unpaid balance is divided ratably among all dwellings erected on the project, which is not according to the facts. The balance due is only for materials delivered between March 1st and June 20th, all deliveries prior to March and after June 20th having been paid for in full. Although some items were delivered in bulk and later used from time to time, others were delivered as and when needed. If the materials used in house No. 1, for example, were fully paid for, it is wrong to charge against that house a portion of the amount due for materials used in house No. 75. The method followed here is clearly not a substantial compliance with the statutory requirement, and, if approved, would make a mockery of that requirement.

█ Plaintiff also contends that Leedom is estopped from denying its right to obtain a lien. Without reviewing all the facts upon which this contention is based, I will merely say that the elements of estoppel are not present. It cannot be held that plaintiff was deceived or misled by Leedom, since Warner's knowledge of the facts at all times was practically as extensive as Leedom's.

Judgment must be entered against the plaintiff.