No. 49,888

WEIGHT WATCHERS OF GREATER WICHITA, INC., *Appellant,* v. SECRETARY OF HUMAN RESOURCES, and EMPLOYMENT SECURITY BOARD OF REVIEW, *Appellees.*

(592 P.2d 887)

Opinion filed March 31, 1979.

*Ted K. Sharp,* of Wichita, was on the brief for the appellant.

*Marlin A. White,* of Holton, was on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is a dispute over the construction of a section of the Employment Security Law (K.S.A. 44-701 through 44-752). Specifically, our task is to construe the meaning of the term "regular part-time employment" as used in K.S.A. 1976 Supp. 44-710(c). Section 44-710 was amended by Laws of 1977, ch. 181, § 4, and the specific provision to be construed may now be found at K.S.A. 1978 Supp. 44-710(c)(2)(B). At the time of this controversy, K.S.A. 1976 Supp. 44-710(c) provided in part as follows:

"[W]here base period wage credits of any employer represent *regular part-time employment* and the claimant continues in that *regular part-time employment* with that employer during the period for which benefits are paid, then that employer's experience rating account shall not be charged with any part of the benefits paid if the employer provides the secretary with information as required by rules and regulations . . . ." (Emphasis supplied.)

It should be noted that the effect of this statute is to exempt an employer's experience rating account from charges for unemployment benefits paid where the claimant continued in regular part-time employment with that employer during the period benefits were paid.

The facts in the case are not in dispute. Marlene K. Reiber had been employed full time with Stuckeys, Inc., in Abilene. In addition to her full-time job, Reiber held a part-time position with Weight Watchers of Greater Wichita, Inc., the plaintiff-appellant. Early in 1977 Reiber terminated her employment with Stuckeys, Inc., and continued her part-time employment with Weight

Watchers. After terminating the full-time employment on February 20, 1977, Reiber applied for and received unemployment compensation benefits for the weeks ending February 26, 1977, through May 7, 1977. At the time Reiber made her claim for unemployment compensation benefits, the defendant-appellee, Secretary of Human Resources, notified Weight Watchers that its experience rating account would be charged for a portion of the unemployment benefits paid to Reiber in accordance with K.S.A. 1976 Supp. 44-710(*c*). Weight Watchers protested the charge against its account, maintaining that Reiber had continued in regular part-time employment with Weight Watchers and that its account should not be charged with the payment of benefits, claiming the exemption contained in K.S.A. 1976 Supp. 44-710(*c*) which is quoted above.

Weight Watchers was provided an administrative hearing on April 29, 1977, before an examiner for the Department of Human Resources. He concluded that Reiber's employment with Weight Watchers did not come within the statutory exemption. He construed the term "regular part-time employment" as used in the statute to require employment in which there is a *constant schedule of hours per day or week without variation.* Weight Watchers appealed the decision to a referee, who reached the same conclusion. The referee, in his decision, construed the term "regular part-time employment" in the statute as follows:

"OPINION: The Kansas Employment Security Law provides that a part-time base period employer's experience rating account will not be charged if the part-time work is regular part time and continuous. Claimant's part-time work has been continuous but has not been regular in that the number of classes she held has varied. The examiner's decision as set out in the first paragraph, hereof, which appears to be factually and legally correct should be affirmed."

Weight Watchers was not satisfied with the decision. It appealed to the Employment Security Board of Review which affirmed the decision of the referee. Weight Watchers then filed a petition for judicial review in the district court of Sedgwick County. The trial court upheld the decision of the board of review, finding that, although Reiber had been employed continuously by Weight Watchers, she had not been regularly employed because there was a variation in the hours worked from week to week. Weight Watchers then appealed to this court.

The testimony at the hearings before the examiner and referee of the Department of Human Resources clearly establishes that

the following factual circumstances were true: Marlene K. Reiber was first employed by Weight Watchers in October or November of 1975. Her first contract of employment with Weight Watchers required her to conduct a class in Abilene. It was understood that this class in Abilene was permanently hers as long as she wanted it. As a teacher or lecturer, she was responsible for the motivation and guidance of the members of the class in their efforts to lose weight. Originally her rate of pay was $12 per two-hour class. This was later increased to $13 per class. The class in Abilene was held every Monday night from 6:30 p.m. to 8:30 p.m. Apparently, Reiber did a good job and she was afforded the opportunity to teach additional classes in the city of Salina. In view of the travel required, she was to be paid mileage expenses. Reiber assumed two Weight Watchers classes in Salina. Both classes were scheduled and taught on Tuesdays—a morning class from 9:30 a.m. to 11:30 a.m. and an evening class from 6:30 p.m. to 8:30 p.m. The record clearly shows that the classes were set at a definite scheduled time and at a definite place. Reiber did not teach any classes on any days except Monday and Tuesday. Reiber received unemployment benefits for the eleven weeks ending February 26, 1977, through May 7, 1977. From the record, it appears that during the weeks ending February 26, 1977, through March 12, 1977, Reiber taught two classes, the one class at Abilene and one class at Salina. During the weeks ending March 19, 1977, through April 16, 1977, Reiber taught three classes, the one at Abilene and the two classes at Salina. She then voluntarily dropped one of the Salina classes and taught two classes during the weeks ending April 23, 1977, through May 7, 1977.

The issue presented requires us to construe the words "regular part-time employment" as used in K.S.A. 1976 Supp. 44-710(c) and then to apply the statutory definition to the undisputed factual circumstances shown in the record. At the outset, it would be helpful to consider the purpose of the statute. The legislature obviously felt that unemployed persons should be encouraged to seek part-time employment where it was available. The income derived from such employment could be used to reduce the total amount of unemployment compensation benefits payable. The Employment Security Law was amended in 1970 to include the exemption discussed above. The change in the statute was the result of a recommendation of the State Advisory Council con-

tained in a pamphlet entitled, "Legislative Proposals, 1970, Kansas Employment Security Law—Recommendations of State Advisory Council." There the purpose of the change in the law was stated to be as follows:

"The purpose of the revision is to provide relief to certain employers from an inequitable situation that occurs under the present law concerning the charging of benefits.

. . . .

"Several times a situation has arisen wherein a worker has been laid-off by his regular employer, filed a claim for unemployment benefits, and has continued to work part-time at a second job. Under the present law, the part-time employers' experience rating account is charged with a share of the benefits paid to the claimant. The proposal is intended as a solution to this inequity of the present law and would disallow the charging of part-time employers' experience rating accounts in these instances."

The term "regular part-time employment" in K.S.A. 1976 Supp. 44-710(c) is not defined anywhere in the Employment Security Law, nor is the term defined anywhere in the administrative regulations of the Department of Human Resources. This lack of statutory or administrative definition obviously would result in inconsistent applications of the statute. There is no dispute in this case that the employee, Reiber, held part-time employment with Weight Watchers. The controversy is over the construction of the word "regular." The word "regular" is a term of common understanding and common usage. It is a basic principle of statutory construction that words in common usage are to be given their natural and ordinary meaning in arriving at the proper construction of a statute. *Grey v. Schmidt,* 224 Kan. 375, 581 P.2d 1180 (1978); *Western Natural Gas Co. v. McDonald,* 202 Kan. 98, 101, 446 P.2d 781 (1968).

In 76 C.J.S. at page 608, we find the following discussion of the word "regular."

"The word 'regular' . . . is a term of common understanding. It does not necessarily, and in all cases, mean 'unvarying,' or imply an unvarying sameness, and in common usage a practice is often spoken of as 'regular' although not always followed, since the word admits of occasional variation.

" 'Regular' is variously defined as meaning steady or uniform in course, practice, or occurrence; returning or recurring at stated or fixed times or uniform intervals; not subject to unexplained or irrational variation; methodical; systematic; orderly; symmetrical; arranged.

"It is also defined as meaning governed by rule or rules; duly authorized or constituted; acting or made according to rule; conformable to law or custom. It also means conformed to a rule. In addition, the word 'regular' means conforming

to a consistent plan; agreeable to an established rule, law, type, or principle, or to a prescribed mode, or to established customary forms; formed after a uniform type. The term is further defined as meaning customary; ordinary; not exceptional or unusual; normal; established; initiated.

"It has been said that, as applied to employment, the word 'regular' is considered to be that which is arranged, not subject to unexplained or irrational variation, that which is orderly."

In *Western National Gas Co.* the word "regular", as used with the words, "course of the taxpayer's trade or business" in K.S.A. 79-3271(*a*), was construed in accordance with the definition contained in Webster's Third New International Dictionary (Unabridged). There "regular" is defined as steady or uniform in course, in practice or occurrence, and not subject to unexplained or irrational variation.

The term "regular employment" has been construed by decisions in other jurisdictions. A distinction is often made between "regular employment" and "casual employment." For example in *McSherry v. City of St. Paul,* 202 Minn. 102, 277 N.W. 541 (1938), it was held that whether a teacher is "regularly employed" within the meaning of the teachers' tenure law was to be determined with principal reference to the scope and purpose of hiring rather than with sole regard to the duration and regularity of service. It was stated that where there is a continuing engagement to serve an employer at such times as particular and essential service may be needed, the employment is not "casual", but "regular." A similar decision may be found in *In re Sugarek,* 77 F. Supp. 998, 999 (N.D. Cal. 1947). We have concluded that the term "regular part-time employment" as used in K.S.A. 1976 Supp. 44-710(*c*) should be construed to mean part-time employment which is systematic, not subject to unexplained or irrational variations, and which is performed in a way or method in accordance with an established rule. Such a statutory construction seems to us to be in accord with the legislative purpose of the statute which is discussed above. We will now proceed to apply this statutory construction to the undisputed facts in the case now before us.

We have no hesitancy, whatsoever, in holding that the claimant, Marlene K. Reiber, continued in "regular part-time employment" with Weight Watchers during the period for which unemployment compensation benefits were paid, the weeks ending February 26, 1977, through May 7, 1977. During this entire period the employee, Reiber, taught the Weight Watchers classes

at Abilene on every Monday evening from 6:30 p.m. to 8:30 p.m. This was her primary contract for which she was originally employed. It is difficult to see how her services in Abilene could have been more orderly and regular than they actually were. In addition, Reiber was given the option to teach two classes in Salina. The Tuesday morning class met regularly from 9:30 a.m. to 11:30 a.m. The Tuesday evening class met regularly from 6:30 p.m. to 8:30 p.m. The fact that Reiber was given a choice of accepting these additional classes did not in any way affect her original contract of employment with Weight Watchers. Her part-time employment during all of those weeks was regular and the class periods were scheduled in advance. The conclusions reached by the administrative officials and the district court in this case were clearly in error. The case must be reversed. It is held that the base period wage credits of Weight Watchers represent regular part-time employment of the claimant, Marlene K. Reiber, and, therefore, the experience rating account of Weight Watchers should not be charged any part of the benefits paid claimant during the period for which unemployment compensation benefits were paid.

The judgment of the district court is reversed.

HERD, J., not participating.