(602 P.2d 549)
No. 50,649

WILLIAM HAROLD CARLSON, *Appellant,* v. HELEN L. CARLSON, *Appellee.*

Opinion filed November 16, 1979.

*Donald E. Lambdin* and *Douglas J. Moshier,* of Lambdin, Kluge & Moshier, Chartered, of Wichita, for appellant.

*Charles F. Harris,* of Kaplan, McMillan and Klinge, of Wichita, for appellee.

Before SWINEHART, P.J., ABBOTT and REES, JJ.

ABBOTT, J.: The only issue in this appeal is whether the trial court erred in increasing the defendant wife's alimony payments from her ex-husband to a level below that provided for in the original decree after it had previously reduced the original monthly alimony payment.

The basic facts are not in dispute. The parties to this action were divorced on July 15, 1969, after thirty-one years of marriage. Mrs. Carlson was awarded alimony of $225 per month, payable until her death or remarriage or until the further order of the court. On February 24, 1971, an order was entered, reducing alimony payments to $175 per month. Mrs. Carlson subsequently developed physical problems that resulted in her total permanent disability to engage in any substantially gainful employment. Her sole income is the $175 alimony payment and $34.40 per month from social security. Mr. Carlson's 1977 income tax return showed an income of $22,939. He has remarried. His present wife has a medical problem that prevents her from working.

The trial judge, after hearing evidence, increased alimony payments from $175 to $210 per month. This appeal followed.

K.S.A. 1978 Supp. 60-1610(*d*) (amended in 1979 without change to subparagraph [*d*]) provides:

> "The decree may award to either party an allowance for future support denominated as alimony, in such amount as the court shall find to be fair, just and equitable under all of the circumstances. The decree may make the future payments conditional or terminable under circumstances prescribed therein. The allowance may be in a lump sum or in periodic payments or on a percentage of earnings or on any other basis. At any time, on a hearing with reasonable notice to the party affected, the court may modify the amounts or other conditions for the payment of any portion of the alimony originally awarded that have not already become due, but no modification shall be made, without the consent of the party liable for the alimony, if it has the effect of increasing or accelerating the liability for the unpaid alimony beyond what was prescribed in the original decree."

It is that portion of the last sentence reading "beyond what was prescribed in the original decree" that we are here called upon to construe.

Both parties attempt to isolate and seize language found in various Kansas cases to support their respective positions. We do not deem any of these Kansas cases applicable. None of them even remotely consider the question we have before us. For example, Mr. Carlson relies on language concerning modification found in *Drummond v. Drummond,* 209 Kan. 86, 90, 495 P.2d 994 (1972), that "[a]llimony may be modified, but the court cannot increase the award either in amount or by decreasing the time in which the spouse must pay the alimony." A similar statement appears in *Carlton v. Carlton,* 217 Kan. 681, 682, 538 P.2d 727 (1975). There it was said that "[t]he statute provides for a modification of the amount of alimony not yet due, *except* that the amount cannot be increased without the consent of the party liable for the alimony." (Emphasis original.) Despite plaintiff's urgings, *Drummond* and *Carlton* may not be interpreted as holding that alimony cannot be raised back to a level less than or equal to the amount set in the original decree. Neither case presents factual patterns that are analogous to the case at bar in which defendant seeks to increase alimony back to its *original level,* and the Court's general discussion of the statute in each case should not be read as laying down a rule applicable under these circumstances.

By the same token, Mrs. Carlson's cited case (*Rasure v. Wright,* 1 Kan. App. 2d 699, 573 P.2d 1103 [1977], *rev. denied* 225 Kan.

845 [1978]) does not stand for the proposition that alimony may be increased back to the amount of the original award. Again, this Court was merely rephrasing the statutory principles and was not faced with the unique issue it now meets when we stated at 701:

"Subsection (*d*) provides that the court may award either party an allowance for future support to be denominated as alimony and the court may modify the amounts or other conditions for the payment of any portion of the alimony originally ordered and not already become due. However, said modification is limited where it has the effect of increasing or accelerating the liability for the unpaid alimony beyond what was prescribed in the original decree unless consented to by the party liable for said alimony."

The proper technique of analysis is to study the statutory language and comb its history and background rather than to give tortured interpretations to dicta from dissimilar cases.

What did the legislature intend when it inserted the language in question?

The intent of the legislature must be found from the language of the statute and, when the language used is plain and unambiguous and appropriate to an obvious purpose, the court should follow the intent as expressed by the words used. *Rosedale State Bank & Trust Co. v. Stringer,* 2 Kan. App. 2d 331, 339, 579 P.2d 158 (1978). Furthermore, it is a basic principle of statutory construction that words in common usage are to be given their natural and ordinary meaning in arriving at the proper construction of a statute. *Weight Watchers of Greater Wichita, Inc. v. Secretary of Human Resources,* 225 Kan. 534, 537, 592 P.2d 887 (1979). Finally, when a statute is plain and unambiguous the court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. *Thomas County Taxpayers Ass'n v. Finney,* 223 Kan. 434, Syl. ¶ 2, 573 P.2d 1073 (1978).

In determining legislative intent, courts are not limited to a mere consideration of the language used, but look to the historical background of the enactment, the circumstances attending its passage, *the purpose to be accomplished,* and the effect the statute may have under the various constructions suggested. *Brown v. Keill,* 224 Kan. 195, Syl. ¶ 3, 580 P.2d 867 (1978); *Boyd v. Barton Transfer & Storage,* 2 Kan. App. 2d 425, 580 P.2d 1366, *rev. denied* 225 Kan. 843 (1978). The language dealing with alimony modification is of relatively recent origin; the provision went into effect in 1964 with the "new" code of civil procedure and re-

placed G.S. 1949, 60-1511, which had stated that an alimony award was final and could not be increased, reduced, or terminated. Our research failed to turn up any record of the circumstances attending its passage except for the fact that it substantially changed the previous law so that modification could now take place. *Flannery v. Flannery*, 203 Kan. 239, 244, 452 P.2d 846 (1969); Gard's Kansas C. Civ. Proc. § 60-1610(*c*) (1963). Dan Hopson, Jr., then a Kansas University law professor, in discussing the concept of divorce under the new code of civil procedure in 33 J.B.A.K. 165 (1964), had the following comments at page 214:

"Judicial imagination in setting the conditions in the original decree is important because of the unique limitation on the courts' power to modify the award later. Kan. Code Civ. Pro., 60-1610(e) reads in part 'The court may modify the amounts or other conditions . . ., but no modifications shall be made . . ., if it has the effect of increasing or accelerating the liability for unpaid alimony beyond what was prescribed in the original decree.'

"This prohibition on upward revision will force the court into either of two devices. The court may award a higher amount than it thinks necessary on the correct assumption that if it proves too much the court may reduce the amount, but if it is too little the court may not increase it or the court may try to control the situation through imaginative . conditions. Apparently the court could, *in the original decree*, order $150 a month so long as the husband's income was below $10,000, but if it went above $10,000 the alimony payment would be $200. Although this type of decree will possibly increase the husband's liability, this liability is spelled out in the original decree and that is all the statute requires. The apparent thrust of the limitation is to allow a husband to know the outside limit of his future liability. He need not know the exact future amount. The various decrees, set out above, should all satisfy the statutory limitation." (Emphasis original.)

Mr. Carlson's counsel vigorously argues that "original decree" must be construed to mean the decree in effect at the time of modification. In support of that position, he contends that the word "originally" also appears in the same sentence and that if we affirm the trial court the logical result would follow that an alimony award can be modified only once. We cannot agree. In our opinion, the word "originally," as used by the legislature in the statute, does not require such a result. It merely states that the court may "modify the amounts or other conditions for the payment of any portion of the alimony *originally* awarded that have not already become due." (Emphasis added.) The use of "originally" is limited to the authority of the court to modify alimony that is past due and has no effect on the number of times

the court may modify alimony within the guidelines set forth in the statute.

We believe the language of K.S.A. 1978 Supp. 60-1610(*d*) to be clear and unambiguous, giving the trial court power to modify unaccrued alimony without the consent of the "paying" party *unless* the modification effectively increases or accelerates "what was prescribed in the original decree." An interpretation of the statute which would prohibit any increase in alimony payments without consent would make the phrase "beyond what was prescribed in the original decree" meaningless. This interpretation closely conforms to the majority of states which, by statute, authorize the upward and downward modification of unpaid alimony. See generally Annot., 61 A.L.R.3d 520; 24 Am. Jur. 2d, Divorce and Separation § 665, p. 782 *et seq.*; 2A Nelson on Divorce and Annulment § 17.01 *et seq.* (2d ed. 1961).

The trial court did not err when it increased the award after having previously decreased the original alimony award.

Pursuant to her request, Mrs. Carlson is awarded attorney fees and expenses in the amount of $1,099 to be paid by Mr. Carlson through the Clerk of the District Court of Stafford County, Kansas.

Affirmed.