(626 P.2d 223)

No. 51,194

CONFINEMENT SPECIALISTS, INC., and HEDLUND ELECTRIC, INC., *Appellants,* v. J. CHRIS SCHLATTER, DONNA JEAN SCHLATTER, HOME STATE BANK & TRUST COMPANY, FIRST NATIONAL BANK OF HUTCHINSON, KANSAS, DALE CAIN, LACKEY SANITATION, INC., and MALM CONSTRUCTION CO., INC., *Appellees.*

Opinion filed April 10, 1981.

*William H. Seiler, Jr.,* of Lehmberg, Bremyer, Wise & Hopp, of McPherson, for appellants.

*Michael E. Chalfant,* of Branine, Chalfant & Hyter, of Hutchinson, for appellee First National Bank of Hutchinson, Kansas.

No appearances for other named appellees.

Before ABBOTT, P.J., REES and MEYER, JJ.

ABBOTT, J.: This is an appeal from a ruling in a foreclosure proceeding that the mechanics' liens of plaintiffs, Confinement Specialists, Inc., and Hedlund Electric, Inc., are limited to a 9.9-acre area that surrounds the work site (a confined hog unit) rather than the whole quarter-section of farm land owned by the defendants J. Chris Schlatter and Donna Jean Schlatter.

Plaintiffs raise two issues in their appeal. They first contend

the trial court erred when it ruled as a matter of law that their mechanics' liens did not attach automatically to the entire quarter-section; and, second, if the trial court was correct on the first issue, that limiting the lien to 9.9 acres is not supported by competent evidence.

The determinative facts are relatively simple and largely undisputed. The Schlatters moved to the quarter-section in question in 1975. The land was owned by Mrs. Schlatter's grandfather. There was a house, barn, two-car garage, chickenhouse, hay shed and one-car garage located on the *southwest* part of the quarter. The quarter-section consisted of approximately fifty acres of tillable ground and the rest was pastureland. The Little Arkansas River runs from north to south on the west side of the property. A road runs along the south and east sides. There are no fences that are significant to this decision.

The Schlatters contracted in May of 1976 to purchase the quarter-section. They contracted with the plaintiff, Confinement Specialists, Inc., (Confinement) in July of 1976 to purchase and have erected a confined hog building. Schlatters selected a building site on the *northeast* part of the quarter-section and contracted with defendant Malm Construction Co., Inc., (Malm) to do the dirt work, which included the construction of a lagoon. Malm did some other work on terraces and a waterway. Confinement started work on the building and finished it in the fall. Prior to completion of the building, the house occupied by the Schlatters in the southwest corner burned. A mobile home was purchased by Schlatters and placed on the original home site.

Confinement and its subcontractor, Hedlund Electric, Inc., (Hedlund) completed their work under the contract, and Hedlund completed work for which it had separately contracted with defendants. Malm also completed its work. Schlatters were unable to meet their financial obligations, and other creditors took mortgages on the full quarter-section on which liens were timely and properly filed by Confinement, Hedlund and Malm. A fourth lien not involved in this appeal was also filed. The four liens all described the full quarter-section.

Confinement and Hedlund filed suit seeking foreclosure of their liens and a determination of priorities. Cross-claims were filed by the mortgage holders seeking foreclosure of their mortgages and by the lienholders seeking foreclosure of their liens.

The Schlatters filed for bankruptcy, were subsequently adjudged bankrupt and discharged. The bankruptcy court abandoned the property, for it had no value in excess of the valid claims against it.

Prior to the trial, the trial judge held that the liens did not automatically attach to the full quarter-section, stating in determining the extent of the liens' attachment that he would consider the nature of the improvement, the amount of property benefited by the improvement, and whether it constituted a separate tract or was a part of the full quarter-section.

As to the cross-claimants, the trial judge granted foreclosure of their mortgages and liens. The mortgage foreclosures were allowed against the whole quarter-section. Malm's lien foreclosure was also allowed against the entire quarter-section on the theory that in addition to working on the 9.9 acres, Malm performed some work on terraces outside the 9.9 acres that benefited the entire quarter-section. The liens of Confinement and Hedlund were limited to an unfenced 9.9-acre tract that apparently was selected on the basis of the trial judge's personal inspection and on a survey made by the Agricultural Stabilization and Conservation Service (ASCS) for a federal Set-Aside program that showed the 9.9 acres as nonproductive. The trial court found that the hog operation was run completely separate from the rest of the farm and that there was no common equipment used in the hog-raising operation and the remainder of the farm. If the trial court is correct, it appears that Confinement and Hedlund judgments will not be paid in full.

The trial court made a number of findings that need not be set forth in detail here. Basically, it found that 9.9 acres was large enough to accommodate the present hog-farming operation and provided sufficient room for expansion as originally contemplated by the Schlatters; that it was totally self-sufficient and not dependent upon the rest of the quarter-section, and was treated as a separate tract by the Schlatters.

Plaintiffs urge that they performed work on a single, legally defined unit, and filed liens on that unit, and that they should not have to be subjected to extensive litigation in order to know the extent of their security. Plaintiffs argue that the trial court misapplied K.S.A. 60-1101 (now 1980 Supp.) in determining the amount of the Schlatters' real property subject to the liens. The

fact that the lien statements themselves recited that the entire quarter-section was subject to the liens is not necessarily determinative in deciding how much property is covered. See *Golden Belt Lbr. Co. v. McLean,* 138 Kan. 351, 26 P.2d 274 (1933). The parties agree that K.S.A. 60-1101 is controlling; they simply disagree as to its proper interpretation. K.S.A. 60-1101, in effect at the time the mechanics' liens in question were filed, stated in pertinent part:

"Any person furnishing labor, equipment, material or supplies used or consumed for the improvement of real property, under a contract with the owner or with the trustee, agent or spouse of the owner, shall have a lien upon *the property* for the labor, equipment, material or supplies furnished, and the lien shall be preferred to all other liens or encumbrances which are subsequent to the commencement of the furnishing of such labor, equipment, material or supplies." (Emphasis supplied.)

The crucial issue in the case at hand is determining whether the phrase "the property" refers to the entire tract of land owned by the defendants or is limited to that area of the land required for the reasonable use and occupation of the improved structure.

Authority from other jurisdictions supports both positions. See 2 Jones on Liens § 1369 (3rd ed. 1914); 57 C.J.S., Mechanics' Liens § 186(a) and (b); Annot., 84 A.L.R. 123; and Annot., 175 A.L.R. 309. The cases from foreign jurisdictions, however, are based largely on state statutes substantially different from ours; as a result, they are of little precedential value in interpreting our statute. *Boyce v. Knudson,* 219 Kan. 357, 362, 548 P.2d 712 (1976). Of primary importance is the legislative intent behind the adoption of K.S.A. 60-1101.

In determining legislative intent, courts are not limited to a mere consideration of the language used, but look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under various constructions suggested. *Carlson v. Carlson,* 4 Kan. App. 2d 63, 65, 602 P.2d 549 (1979). K.S.A. 60-1101 was formerly R.S. 1923, 60-1401, and G.S. 1949, 60-1401, which stated:

"*Any person who shall under a contract with the owner of any tract, or piece of land,* or with a trustee, agent, husband or wife of such owner, either by himself or with horse, or team or horses and driver, or auto truck or auto truck and driver, perform labor or furnish material for the erection, alteration, moving or repair of any building, improvement or structure thereon, or who shall furnish material or

perform labor by himself or with horse, or team or horses and driver, or auto truck or auto truck and driver in putting up of any fixtures or machinery in or attachment to any such building, structure or improvement, or who shall plant any trees, vines, plants or hedge in or upon such land, or who shall build, alter or repair, or furnish labor by himself, or with horse, or team or horses and driver, or auto truck or auto truck and driver, or material for building, altering or repairing any fence or footwalk in or upon said land, or any sidewalk in any street abutting said land, *shall have a lien upon the whole of said piece or tract of land,* the building and appurtenances, in the manner herein provided, for the amount due to him for such labor of himself, horse, team, horses and driver, or auto truck or auto truck and driver, material, fixtures or machinery. Such lien shall be preferred to all other liens or encumbrances which may attach to or upon said land, building, or improvement, or either of them, subsequent to the commencement of such building, the furnishing or putting up of such fixtures, or machinery, the planting of trees, vines, plants or hedge, the building of such fence, footwalk, or sidewalk, or the making of any such repairs or improvements." (Emphasis supplied.)

As we interpret the language of the former statute, the plaintiffs' liens would have attached to the whole quarter-section owned by defendants. The Kansas legislature as part of its massive revision of the Kansas Code of Civil Procedure in 1963 amended G.S. 1949, 60-1401 (L. 1963, ch. 303, 60-1101) to its form at the time of this case. Did the legislature intend a change when it amended the statute? Defendants stress the well-settled rule of statutory construction as typified by *Linson v. Johnson, Executrix,* 1 Kan. App. 2d 155, 160, 563 P.2d 485 (1977), *aff'd* 223 Kan. 442, 575 P.2d 504 (1978):

"When a statute is revised and some parts are omitted, the omitted parts are not readily to be supplied by construction but are generally to be considered as annulled. (*State, ex rel., v. Richardson,* 174 Kan. 382, 256 P.2d 135.) A change in phraseology or the deletion of a phrase in amending or revising a statute raises a presumption that a change of meaning was intended by the legislature. (*Shawnee Township Fire District v. Morgan,* 221 Kan. 271, 559 P.2d 1141.) K.S.A. 60-1610 has been referred to previously by our supreme court as having changed the law with respect to alimony and divorce. (*In re Estate of Sweeney,* 210 Kan. 216, 500 P.2d 56; *Fiske v. Fiske,* 218 Kan. 132, 542 P.2d 284.)"

This interpretive presumption, however, is not to be rigidly applied, as illustrated in an early Kansas case, *Hauserman v. Clay County,* 89 Kan. 555, 558, 132 Pac. 212 (1913):

"Ordinarily there is a presumption that a change in the language of a statute results from a purpose to change its effect, but this presumption may be strong or weak according to circumstances, and may be wanting altogether in a particular case. The accepted rule and its limitations have been thus stated:

" 'It will be presumed that the legislature, in adopting the amendment, intended

to make some change in the existing law, and therefore the courts will endeavor to give some effect to the amendment. A change of phraseology from that of the original act will raise the presumption that a change of meaning was also intended; this presumption is fairly strong in the case of an isolated, independent amendment, but *is of little force in the case of amendments adopted in a general revision or codification of the laws, as in such case the change of phraseology may be due to a rearrangement of the statutes or to a desire to improve the style.'* (36 Cyc. 1165.)" (Emphasis supplied.)

Research reveals little documented legislative history concerning the statutory amendment except the following advisory committee note:

"There has been no major change in the right and none in the procedure pertaining to liens for improvement of real property. In some cases the volume has been reduced for the purpose of clarity such as in this and the next three sections covering GS 60-1401 to GS 60-1404." 2 Gard's Kansas C. Civ. Proc. 2d Ann. § 60-1101 (1979).

Judge Gard, in his own comments, states:

"Subsection (a), which is substantially the whole of this section as originally enacted, is a condensed version of GS 1949, 60-1401, and is intended to accomplish exactly the same result as the much longer former section."

Both parties place some reliance on the following language found in *Lumber Co. v. Blanch,* 107 Kan. 459, 463, 192 Pac. 742 (1920), a case decided under the "entire tract" language:

"It is claimed that lots 16, 18, 20, 22, and 24 are on one side of an alley; that lots 17 and 19 are across the alley from those first named; and that therefore all the property cannot be subjected to the lien. If the entire property was used by the Conners as one property, although the alley ran through it, the lien would properly attach to the whole of the property. If the two tracts were used as separate properties, and the improvements made were all on one of them, the lien would attach only to that property on which the improvements were made. While not directly in point the following authorities support these rules:

"(*Mulvane v. Lumber Co.,* 56 Kan. 675, 44 Pac. 613; *Lumber Co. v. Smith,* 84 Kan. 190, 114 Pac. 372; *Lehmer v. Horton,* 67 Neb. 574; 27 Cyc. 224-225; 18 R.C.L., 947-952.)"

In our mind, *Blanch* is distinguishable from the case at hand in that the court there spoke in regard to two tracts not immediately contiguous because of separation by an alley, while here there is but one tract of land. It seems inappropriate to us to apply the rule of law set forth in *Blanch* to the facts of this case as is urged by the defendants, for in the case before us we are not attempting to join several separate tracts. Here, the landowners and those who stand somewhat in their shoes are attempting to separate a major por-

tion of one tract. See *Mulvane v. Lumber Co.*, 56 Kan. 675, 44 Pac. 613 (1896).

We are of the opinion that the legislature did not intend to change the amount of land subject to mechanics' liens when it amended the mechanic's lien statute in 1964. As we view the trial court's findings, the quarter-section was a single unit and had been operated as such until approximately the time the contract for a hog confinement facility was entered into. The quarter-section was contiguous, and the parties do not contend that any portion was separated by roadways or by any other manner at the time of construction to indicate that the hog operation was a separate unit. The fact that the Schlatters rented a portion of the quarter-section to others, and at some point after construction started they rented the remainder of the quarter-section (excluding the hog operation area and the home and farm buildings) to others, does not require a different result. The trial judge erred in limiting the liens to the 9.9-acre tract. The case is remanded to the trial court with directions to enter judgment for Confinement Specialists, Inc., and Hedlund Electric, Inc., allowing their mechanics' liens to be foreclosed against the whole quarter-section.

Reversed and remanded with directions.