(273 P.3d 801)

No. 103,560

STATE OF KANSAS, *Appellee*, v. CONRAD J. BRAUN, *Appellant*.

Opinion filed March 30, 2012.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Emilie Burdette* and *Steven J. Obermeier*, assistant district attorneys, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., LEBEN and ATCHESON, JJ.

LEBEN, J.: Conrad Braun appeals his blackmail conviction, claiming that the evidence was insufficient to convict him of blackmailing his ex-wife's husband. At the time Braun was charged, blackmail was defined by statute as "compelling another to act against such person's will." Braun notes that the alleged victim, Tucker Kirk, didn't actually take any action that Braun asked Kirk to take—neither refraining from contact with Braun's children nor signing a contract Braun had prepared—in the communications that led to the blackmail charge.

Braun's point is well taken. The statute defined blackmail as *compelling another to act,* not attempting to do so. Since Kirk didn't act in response to Braun's communication, the State did not present sufficient evidence of blackmail, and Braun's conviction must be reversed.

The issue before us is primarily one of statutory interpretation, over which we exercise unlimited review. Thus, we give no specific deference to the district court's interpretation of the statute. *State v. Finch*, 291 Kan. 665, Syl. ¶ 2, 244 P.3d 673 (2011). Our goal is to determine the legislature's intent through the statute's language,

which is generally done by giving ordinary words their ordinary meaning. *Finch*, 291 Kan. 665, Syl. ¶ 2.

A special rule, the rule of lenity, guides us when determining the meaning of an ambiguous criminal statute. When there is a reasonable doubt about the statute's meaning, we apply the rule of lenity and give the statute a narrow construction. *State v. Chavez*, 292 Kan. 464, 468, 254 P.3d 539 (2011); *State v. Reese*, 42 Kan. App. 2d 388, 390, 212 P.3d 260 (2009).

Two important policies are served by the rule of lenity. First, people should have fair notice of conduct that is criminal. *Reese*, 42 Kan. App. 2d at 390. Second, narrow interpretation when there is some reasonable doubt about a criminal statute's meaning best respects the legislature's role in defining what constitutes a crime. Kansas has no common-law crimes, K.S.A. 21-3102(1), so something is a crime only if the legislature says so by statute. If the courts broadly interpreted ambiguous criminal statutes, we might inadvertently overstep our role and make something criminal even though the legislature had not intended that result. See *State v. Knight*, 44 Kan. App. 2d 666, 681, 241 P.3d 120 (2010), *rev. denied* 292 Kan. 967 (2011).

So with these rules in mind, let's look at the Kansas blackmail statute as it existed when Braun is alleged to have committed this crime: K.S.A. 21-3428. We have added some bracketed numbers to show the statute's structure. K.S.A. 21-3428 provides: "Blackmail is [1] gaining or attempting to gain anything of value *or* [2] compelling another to act against such person's will, by threatening to communicate accusations or statements about any person that would subject such person or any other person to public ridicule, contempt or degradation." (Emphasis added.)

The statute's structure makes it a requirement in all cases that the perpetrator threaten to communicate something about another person that would publicly harm the person. In addition, the perpetrator must also *either* "gain[] or attempt[] to gain anything of value" or "compel[] another to act against such person's will." The State did not claim Braun sought to gain anything of value in this case, so the legal question before us comes down to whether Braun "compel[led] another to act against such person's will." The State

agrees that there was no evidence that the alleged victim took any action that Braun sought to compel him to take.

The State does cite some definitions that suggest "compel" can mean the exertion of strong force without explicit reference to a necessary reaction. The third definition provided by the American Heritage Dictionary is "[t]o exert a strong irresistible force on; sway." American Heritage Dictionary 376 (4th ed. 2006). The State also cites a definition from an earlier edition of Black's Law Dictionary, which defined compel as "[t]o urge forcefully; under extreme pressure." Black's Law Dictionary 282 (6th ed. 1990). But the Black's entry cited by the State also noted that "the hallmark of compulsion is the presence of some operative force producing an involuntary response." And the first definition in the Oxford American Dictionary is "to use force or influence to cause (a person) to do something, to allow no choice of action." Oxford American Dictionary 128 (1980).

We do not find this a case that can—or should—be determined through a dictionary debate. Instead, our conclusion is based on two key points. First, the way the legislature constructed the statute strongly suggests that the crime victim must take some action in response to the blackmailer's communication. Second, in looking at the statute from the State's perspective, there is at most an ambiguity about whether the victim must act, making this a proper situation to invoke the rule of lenity.

Let's return, then, to the statute's structure. The crime requires one of two things: (1) gaining *or attempting to gain* anything of value or (2) *compelling* another to act against such person's will. The legislature specifically provided that either actually gaining something of value or merely attempting to do so would qualify, but the legislature did not include "attempting to compel" language with respect to the requirement that someone act against his or her will. In addition, the triggering phrase is compelling another *to act* against his or her will. This too emphasizes that action is a part of this element of the crime of blackmail.

We apply the rule of lenity when there is reasonable doubt about statutory meaning, and although the State can cite some definitions to support its case, usage of the word "compel" usually sends a

stronger message than the State urges here. Lexicographer Bryan Garner compares the standard usage of the words compel and impel, noting that compel "is the stronger word, connoting force or coercion, with little or no volition on the part of the [person] compelled." Garner's Modern American Usage 172 (3d ed. 2009). When we combine the normal usage of compel with the structure of this statute ("compelling another to act against such person's will"), there is at least an ambiguity about whether the victim must be compelled to take action, squarely making the rule of lenity applicable.

We note that the legislature recently amended the blackmail statute to prohibit "compelling or attempting to compel another to act against such person's will." See K.S.A. 2011 Supp. 21-5428 (effective July 1, 2011). That amendment was part of an overall recodification of the Kansas Criminal Code. We do not suggest that changes made by the 2010 legislature provide specific guidance in how to interpret a statute passed many years earlier. But the change is perhaps noteworthy as an example of how easily the legislature could have indicated its agreement with the interpretation urged by the State in Braun's case.

In 2003, when the State alleges Braun committed his crime, the statute required that the actor "compel[] another to act against such person's will." Because Kirk took no action, Braun did not commit the crime of blackmail as it was then defined by law. Braun asks that his conviction be reversed because the evidence wasn't sufficient to convict him of blackmail. Even when we view the evidence in the light most favorable to the State, as we are required to do when considering whether the evidence was sufficient to convict, there was no evidence that the alleged victim took any action and thus there was insufficient evidence to convict Braun for blackmail. See *State v. Everest*, 45 Kan. App. 2d 923, 929-30, 256 P.3d 890 (2011) (holding that conviction must be reversed when evidence considered in light most favorable to State does not prove the crime), *rev. denied* 293 Kan. 1109 (2012).

The State suggested in its brief that we should treat the error here as a jury-instruction error and send the case back for retrial in which a correct definition of blackmail could be given to the

jury. But the State chose to prosecute Braun for blackmail, not for attempted blackmail, and the State did not present evidence of blackmail to the jury. The State is not entitled to try Braun a second time on a new theory, *i.e.*, that he only committed an attempted blackmail.

The judgment of the district court is reversed.