IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,127

In the Matter of MICHAEL PELOQUIN,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed December 5, 2014. Three-month suspension.

*Kimberly L. Knoll*, Deputy Disciplinary Administrator, argued the cause and was on the brief for the petitioner.

*Michael Peloquin*, respondent, argued the cause and was on the brief pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Michael Peloquin, of Wichita, an attorney admitted to the practice of law in Kansas in 2000.

On August 26, 2013, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on September 16, 2013. The Disciplinary Administrator and the respondent entered into a joint stipulation of facts. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on October 21, 2013, where the respondent was personally present. The hearing panel determined that respondent violated KRPC 1.3 (2013 Kan. Ct. R. Annot. 464) (diligence); 1.15 (2013 Kan. Ct. R. Annot. 553) (safekeeping property); and 5.3 (2013 Kan. Ct. R. Annot. 627) (responsibilities regarding nonlawyer assistants).

1

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"*Representation of S.W.*

"8.    In October, 2010, S.W. retained the respondent to expunge a criminal matter in Shawnee County, Kansas. The respondent and S.W. agreed to a fee of $500.00. Additionally, S.W. was to pay the $115.00 filing fee. The respondent agreed to file the expungement after the fee was paid.

"9.    S.W. made payments on the fees from October 2010, to May 4, 2011. On May 4, 2011, the respondent's legal assistant noted that the fee was 'paid in full.' After S.W. paid the fee, the respondent failed to file the expungement petition on behalf of S.W., as agreed.

"10.    On August 23, 2011, S.W. filed a complaint with the disciplinary administrator's office. By letter, the disciplinary administrator directed the respondent to provide a written response to the complaint filed by S.W. The respondent failed to provide a written response as directed.

"11.    The disciplinary administrator sent two additional letters, again, directing the respondent to provide a written response to the complaint. The letters were returned to the disciplinary administrator and marked, 'unable to forward.'

"12.    Eventually, the attorney assigned to investigate S.W.'s complaint made contact with the respondent and the respondent provided a written response to the complaint. In his response, the respondent explained that the post office made an error in his request to have his mail forwarded.

2

"13. The respondent also explained that initially he filed the petition in the wrong court. And, later, when he filed the petition in the correct court, he did not provide a sufficient number of copies and the petition was returned by the court. The respondent claims that he never received the returned petition because of the post office's error with the request to forward the mail.

"14. After the respondent received a copy of S.W.'s complaint, the respondent contacted S.W. in person. Again, S.W. asked the respondent to file a petition for expungement. The respondent filed the petition and obtained an order of expungement.

"*Representation of E.G.*

"15. E.G. retained the respondent to represent her in a civil action which arose following a car accident. The respondent made a settlement offer of $2,500.00. E.G. rejected the settlement offer. E.G. terminated the respondent's representation and hired new counsel, Tom Warner.

"16. Mr. Warner attempted to negotiate a settlement. The insurance company informed Mr. Warner that it had already settled the matter for $15,000.00.

"17. The respondent's office manager negotiated the settlement without the respondent's knowledge. Additionally, unbeknownst to the respondent, the respondent's office manager negotiated the check.

"18. The respondent filed a claim with his malpractice carrier. The insurance company denied the claim.

"19. Mr. Warner filed suit against the respondent on behalf of E.G. The respondent negotiated a settlement with Mr. Warner, with a payment plan. On September 5, 2012, the court entered an order of judgment in the amount of $20,861.30, plus interest against the respondent as a result of the settlement. Mr. Warner has filed an order in aid of execution of the judgment. At the time of the attorney disciplinary hearing, the respondent was current on the settlement payments.

3

"20.     During the course of the investigation of E.G.'s complaint, the attorney investigating the complaint learned of additional settlements checks which the respondent's office manager negotiated without the respondent's knowledge.

"21.     Travelers Insurance issued a check in the amount of $37,264.08, made payable to the respondent, Wesley Medical Center, and Michael Serve. Wesley Medical Center did not endorse the check, however, its endorsement that appears on the check was forged. It appears that the respondent's office manager cashed the check without the respondent's knowledge. The respondent reported the theft to the Overland Park Police Department.

"22.     Wesley Medical Center filed suit against the respondent. On July 18, 2012, the court granted partial judgment against the respondent. On December 16, 2012, the court issued a garnishment in the amount of $21,542.53. On January 22, 2013, Mr. Serve filed a cross-claim against the respondent. Mr. Serve's cross-claim remains pending against the respondent.

"23.     At the time the respondent discovered the thefts, the respondent's office manager removed his computer from the respondent's office and did not return to work. The law enforcement officers assigned to investigate the thefts have been unable to locate the respondent's former office manager.

"24.     The respondent believes that there are two additional checks which the office manager negotiated without authorization. Because the officer manager took the computer, the respondent is unable to determine additional individuals victimized by the office manager's theft.

"25.    Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.3, KRPC 1.15, and KRPC 5.3, [Footnote: The disciplinary administrator also charged the respondent with violating KRPC 8.4(a). However, in the hearing panel's opinion, concluding that the respondent violated KRPC 8.4(a) would require that the hearing panel conclude that the respondent knew what the office manager was doing. The hearing panel concludes that the respondent did not know what the officer manager was doing. If the definition of 'knowing' also included 'should have known,' the hearing panel would have concluded that the respondent also violated KRPC 8.4(a). The respondent should have known what the office manager was doing. The respondent did not, however, know what the office manager was doing.] as detailed below.

## "KRPC 1.3

"26.    A lawyer shall act with reasonable diligence and promptness in representing a client. KRPC 1.3. The respondent failed to diligently and promptly represent S.W. by properly filing the expungement. Because the respondent failed to act with reasonable diligence and promptness in representing his client, the hearing panel concludes that the respondent violated KRPC 1.3.

## "KRPC 1.15

"27.    Lawyers must keep the property of their clients safe. *See* KRPC 1.15. In E.G.'s case, the respondent failed to properly safeguard his client's property when he failed to properly supervise his office manager. Therefore, the hearing panel concludes that the respondent violated KRPC 1.15.

## "KRPC 5.3

"28.    Attorneys have certain responsibilities with respect to nonlawyer employees. In that regard, KRPC 5.3(b) provides, 'a lawyer having direct supervisory

5

authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer.' In this case, the respondent failed to make reasonable efforts to ensure that his office manager's conduct was compatible with the respondent's professional obligations.

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"29.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"30.     *Duty Violated*. The respondent violated his duty to his client to provide diligent representation and the respondent violated his duty to his clients to properly safeguard his clients' property.

"31.     *Mental State*. The respondent knowingly violated his duty to his client to provide diligent representation and the respondent negligently violated his duty to his clients to properly safeguard his clients' property.

"32.     *Injury*. As a result of the respondent's misconduct, the respondent caused actual injury to his clients and third parties.

"Aggravating and Mitigating Factors

"33.     Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel found the following aggravating factors present:

6

"34.    *A Pattern of Misconduct*. The respondent has engaged in a pattern of misconduct by failing to supervise his office manager for an extended period of time.

"35.    *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 1.3, KRPC 1.15, and KRPC 5.3.

"36.    *Vulnerability of Victim*. S.W. and E.G. were vulnerable to the respondent's misconduct.

"37.    Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel found the following mitigating circumstances present:

"38.    *Absence of a Prior Disciplinary Record*. The respondent has not previously been disciplined.

"39.    *Absence of a Dishonest or Selfish Motive*. The respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

"40.    *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. The respondent suffers from many health problems. It is clear that the respondent's health problems contributed to his misconduct.

"41.    *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions*. The respondent fully cooperated with the disciplinary process. Additionally, the respondent admitted the facts that gave rise to the violations.

"42.    *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney*. The respondent is an active and productive member of the

7

bar. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by several letters received by the hearing panel.

"43.     *Imposition of Other Penalties or Sanctions*. As a result of the respondent's office manager's thefts, judgments have been entered against the respondent. The respondent is currently making payments toward the satisfaction of the judgments. Thus, the respondent has experienced other sanctions for his failure to properly supervise his office manager.

"44.     *Remorse*. At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

"45.     In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.13    Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.

'4.42    Suspension is generally appropriate when:

(a)     a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)     a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'7.2     Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

8

"46.     The disciplinary administrator recommended that the respondent's license to practice law be suspended for a period of 6 months. The disciplinary administrator further recommended that the respondent undergo a reinstatement hearing, pursuant to Kan. Sup. Ct. R. 219, prior to consideration of reinstatement. The respondent recommended that his proposed plan of probation be adopted and that he be allowed to continue to practice, subject to the terms and conditions set forth in his proposed probation plan.

"47.     The hearing panel shall not recommend that a respondent be placed on probation unless:

'(i)     the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least fourteen days prior to the hearing on the Formal Complaint;

'(ii)    the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

'(iii)   the misconduct can be corrected by probation; and

'(iv)    placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

Kan. Sup. Ct. R. 211(g)(3).

"48.     In this case, the respondent failed to develop a workable, substantial, and detailed plan of probation as the proposed plan does not assure restitution to all victimized clients. By respondent's own admission, he cannot identify all who may have

9

lost funds to the office manager's theft and, therefore, the hearing panel concludes that the respondent cannot make all injured clients whole. Further, the respondent's proposal that he be allowed to accept two new personal injury cases per month is unworkable. The respondent first met with the practice supervisor the day before the respondent's disciplinary hearing. It is therefore difficult to conclude that the respondent put the proposed plan of probation into effect prior to the hearing on the formal complaint. Consequently, the hearing panel concludes that placing the respondent on probation is not in the best interests of the legal profession and the citizens of the State of Kansas.

"49.    Based upon the joint stipulation, the findings of fact, the conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be suspended for a period of three months. The hearing panel also recommends that the respondent proactively try to determine the other checks that he believes the former office manager negotiated without authorization. The hearing panel recommends that the respondent immediately and before the oral argument before the Kansas Supreme Court, undergo a complete psychological evaluation and provide a copy of the report of the evaluation to the disciplinary administrator. The purpose of the evaluation should be to determine if the respondent suffers from a mental condition that materially impairs his ability to represent clients. The hearing panel further recommends that prior to consideration of reinstatement, the respondent be required to undergo a reinstatement hearing, pursuant to Kan. Sup. Ct. R. 219. During the reinstatement hearing, the hearing panel recommends that the respondent be required to establish that his health and memory are sufficient to engage in the active and continuous practice of law. Finally, the hearing panel recommends that if the respondent is reinstated, that he be reinstated subject to the terms and conditions set forth in the respondent's probation plan for a period of two years. The hearing panel also recommends that the respondent be required to complete a continuing legal education program on law practice management as a condition of probation.

"50.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of the KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2013 Kan. Ct. R. Annot. 356). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he filed an answer, and adequate notice of the hearing before the panel and the hearing before this court. The respondent filed exceptions to the hearing panel's final hearing report. More specifically, he took exception to the panel's finding that he violated KRPC 1.3, KRPC 1.15, and KRPC 5.3. The respondent did not take exception to hearing panel's factual findings, however. Instead, he admitted the facts as laid out in the report, although he asked that those facts be considered in light of several mitigating circumstances.

We will, therefore, segment our discussion of the hearing panel's factual findings and its conclusions of law. Regarding the factual findings, the respondent's admissions and our own review of the record lead us to conclude there is substantial competent evidence to support the panel's findings. The respondent's approach to the panel's conclusions of law is more complicated.

As indicated, although respondent took exception to the panel's conclusions that he violated KRPC 1.3, 1.15, and 5.3, his brief before this court is less clear; in fact, it is confusing and contradictory. On the one hand, the respondent "admits violations of the

11

K.R.P.C." Further, he enumerates only one issue: "What is the appropriate discipline to be imposed against Michael Peloquin?" He then argues that mitigating facts explain his violations. For example, respondent argues his lack of diligence and promptness in his representation of S.W. resulted from him having to deal with health issues and his lack of awareness of certain court requirements. He also explains that he failed to timely respond to the three letters from the Disciplinary Administrator regarding S.W.'s complaint because the post office committed a forwarding error. On the other hand, portions of respondent's brief can be read as arguments that he did not violate any rules.

Regardless of whether we rely on the procedural insufficiencies of respondent's briefing or on our independent review of the record, we reach the same conclusion: The record establishes by clear and convincing evidence that the respondent violated KRPC 1.3, 1.15, and 5.3.

*The record fully supports the panel's findings of misconduct*

Regarding the violation of KRPC 1.3, the record clearly establishes that the respondent failed to act with reasonable diligence and promptness in representing his client S.W. in the expungement proceeding. Respondent admits there was a delay but argues that "some delays were not unreasonable," and the delay in filing S.W.'s action was not unreasonable in light of his "health issues, problems with the post office, and the restitution delay in obtaining the orders of expungement." We disagree with the suggestion that the delay encountered by S.W. was reasonable. Even if we accept that respondent's health issues and the problem with the post office reasonably explain some of the delay, neither excuse—either independently or cumulatively—justifies the lengthy delay in this case. Despite respondent's health issues, he was responsible for acting with reasonable diligence and promptness; consequently, if his health prevented him from getting the action on file, he should have advised S.W. Instead, respondent took no action

12

for over 7 months after S.W. had paid the requisite fee. Then respondent filed the petition in the wrong court, failed to provide a sufficient number of copies when he subsequently filed the petition in the correct court, and apparently failed to take steps to promptly follow up once he thought there was a pending action. Because of his failure to prosecute the petition, he was oblivious to the fact the court had returned the petition or to the fact that the court's mailing had not reached him because of a glitch with the post office. Given respondent's lack of diligence, neither the health issues nor the problems with the post office can justify the lengthy delay encountered by S.W.

With regard to KRPC 1.15 and 5.3, the facts are clear and convincing that respondent did not properly supervise his office manager, he failed to keep a master list of clients, and he failed to keep proper accounting records. These failures resulted in unauthorized settlement negotiations, delays or omissions of deposits or disbursement of funds, and misappropriation of monies. Had respondent acted with the care of a "professional fiduciary" (see KRPC 1.15, Comment [1] [2013 Kan. Ct. R. Annot. 556]) and provided "appropriate instruction and supervision concerning the ethical aspects" of the office manager's employment (see KRPC 5.3, Comment [1] [2013 Kan. Ct. R. Annot. 627]), the monetary losses may have been thwarted and certainly could be more accurately accounted for so that full restitution could occur. There is clear and convincing evidence that respondent violated KRPC 1.15 and 5.3.

*Suspension is an appropriate discipline*

The hearing panel recommended the respondent be suspended from the practice of law for a period of 3 months. In reaching this recommendation, the panel rejected the Disciplinary Administrator's recommendation for a 6-month suspension and the respondent's request for informal censure or probation. The panel concluded the respondent failed to develop a workable, substantial, and detailed probation plan. In large

part, this was because respondent failed to identify all who might be owed restitution. Further, respondent failed to implement the plan before the disciplinary hearing, instead meeting with his practice supervisor for the first time only the day before the panel's hearing. Finally, the panel concluded the plan was not in the best interests of the legal profession or the citizens of the state of Kansas. The panel recommended that respondent "immediately and before the oral arguments before the Kansas Supreme Court, undergo a complete psychological evaluation and provide a copy of the report of the evaluation to the disciplinary administrator." The panel also recommended that before respondent could be readmitted to the practice of law, he must undergo a reinstatement hearing under Supreme Court Rule 219 (2013 Kan. Ct. R. Annot. 407) at which he must establish that he was sufficiently healthy to engage in the active and continuous practice of law. If respondent was reinstated, the panel recommended his reinstatement should be subject to the terms and conditions of respondent's proposed probation plan for a period of 2 years and that he be required to complete a continuing legal education program on law practice management.

At the hearing before this court, at which the respondent appeared, Deputy Disciplinary Administrator Kimberly L. Knoll recommended that the respondent be indefinitely suspended. In part, Knoll based her recommendation on the respondent's failure to provide evidence that he had undergone the psychological evaluation suggested by the hearing panel. Respondent proferred that he had completed an evaluation, but he explained that he did not understand that he could present additional evidence after the record before the panel hearing had closed. In rebuttal, Knoll pointed to this court's practice of receiving affidavits from a respondent under Rule 211(g)(5) (2013 Kan. Ct. R. Annot. 356), which requires a respondent to file an affidavit with the Disciplinary Administrator and the Clerk of the Appellate courts establishing that the respondent has complied with terms of a proposed probation plan during the time between the panel hearing and oral argument before the Supreme Court.

14

But a psychological evaluation was not part of respondent's proposed probation plan, and the hearing panel did not recommend probation. Hence, although we agree that the respondent would have been well served to have filed an affidavit, we conclude that the respondent's view that the record was closed is not unreasonable. Rule 211 is ambiguous; our rules do not make it clear that an affidavit could be filed in these circumstances.

Knoll also suggested that a 3-month period of suspension is too short a period for respondent to effectively deal with any psychological issues. It would be unfair, she argued, to give respondent a false hope of being readmitted after so short a period of time. Her argument presupposes an outcome that might differ from the recommendations of the evaluators. In addition, we note that the hearing panel did not question the respondent's fitness to practice law.

In weighing the respondent's conduct and the ABA Standards for Imposing Lawyer Sanctions, we adopt the hearing panel's recommendation. See ABA Compendium of Professional Responsibility Rules and Standards (2012); *In re Woodring*, 289 Kan. 173, 180, 186, 210 P.3d 120 (2009) (discussing and applying ABA Standards). We agree with the hearing panel's conclusions that respondent failed to develop a workable, substantial, and detailed probation plan; the respondent's probation plan was not in effect at the time of the panel hearing; and it was not in the public's best interests. We, therefore, reject respondent's request that we place him on probation. We unanimously adopt the hearing panel's recommendation that the respondent be suspended from the practice of law for 3 months from the date of this opinion. Respondent may then petition for reinstatement under Rule 219. If respondent seeks reinstatement in the future, he will be required to produce reasonably contemporaneous reports from physical and mental health professionals describing his compliance with any treatment

15

recommendations and supporting his petition for reinstatement. Further, respondent's reinstatement panel should investigate and develop recommendations for the court on whether any period of respondent's future law practice should be supervised. In addition, in order to achieve any future reinstatement, the respondent must be in compliance with CLE requirements and should have completed one or more programs in law office management. Finally, the reinstatement panel should evaluate whether the respondent has taken all appropriate steps to identify all clients to whom restitution is owed for the misappropriation of funds. In imposing this requirement, the court recognizes the possibility that all losses may never be ascertained. Nevertheless, respondent must make a reasonable effort to determine whether there are any unreported losses. The reinstatement panel should also evaluate whether respondent has developed a plan of restitution for all identified clients.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Michael Peloquin be suspended from the practice of law in the state of Kansas for a period of 3 months effective on the filing of this opinion in accordance with Supreme Court Rule 203(a)(2) (2013 Kan. Ct. R. Annot. 300).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2013 Kan. Ct. R. Annot. 406) and, in the event of his filing a petition for reinstatement, shall be subject to a reinstatement hearing under Rule 219.

16

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 111,127 to fill the vacancy on the court created by the appointment of Justice Nancy Moritz to the United States 10th Circuit Court of Appeals.