NOT DESIGNATED FOR PUBLICATION

No. 123,862

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

THOMAS KERRIGAN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Riley District Court; KENDRA LEWISON, judge. Opinion filed October 28, 2022. Reversed and remanded.

*Barry A. Clark*, of Clark & Platt, Chtd., of Manhattan, for appellant.

*John A. Griffin*, assistant county attorney, *Barry Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GARDNER, P.J., HILL and ISHERWOOD, JJ.


PER CURIAM: Thomas J. Kerrigan was convicted of driving under the influence (DUI). Kerrigan requested an attorney at least twice before completing an evidentiary breath test, but the arresting trooper never honored the requests. Kerrigan moved to suppress the breath test result and claimed the trooper violated his statutory right to counsel under K.S.A. 2019 Supp. 8-1001(c)(1). The district court initially granted his motion, relying on *Dumler v. Kansas Dept. of Revenue*, 302 Kan. 420, 354 P.3d 519 (2015). The State filed a motion for reconsideration and argued the district court erroneously relied on *Dumler* because the Kansas Legislature amended K.S.A. 8-1001 in

1

2018, thereby abrogating *Dumler*'s interpretation of the statutory right to counsel. The district court agreed that the *Dumler* analysis no longer applied under the new language in K.S.A. 2019 Supp. 8-1001(c)(1), determining it only created a statutory right to request counsel following a completion of a breath test. The district court reconsidered Kerrigan's motion to suppress in light of the State's argument and ultimately reversed course and declined to suppress the evidence. The district court went on to find Kerrigan guilty of DUI at a bench trial on stipulated facts.

Kerrigan now brings the matter before this court to analyze and determine whether the district court erred in denying his motion to suppress. According to Kerrigan, the amendments to K.S.A. 2019 Supp. 8-1001(c)(1) did not alter the *Dumler* analysis or require that he request counsel after the breath test's administration to have a right to speak to counsel. Following a thorough review of the issue, we find the district court reached its conclusion in error because the plain language of the statute does not require the State to honor a request for counsel only when it is uttered after a person submits to a breath test. The 2018 amendments to (c)(1) were not disturbed by the statute's 2019 amendment, and the 2019 iteration applies to Kerrigan's traffic stop in March 2020. To the extent that the statute is unclear regarding the timing requirement, then the rule of lenity demands that we construe the statute in Kerrigan's favor. Thus, the decision of the district court is reversed, and Kerrigan's case is remanded for a rehearing where the district court can apply the proper standard.

FACTUAL AND PROCEDURAL BACKGROUND

Kansas Highway Patrol Captain Scott Walker was patrolling for drunk or aggressive drivers shortly after midnight when he observed the operator of a silver Honda Pilot commit a traffic violation by turning into the outside lane on US-24 Highway. Walker followed the vehicle, ran its registration, and learned that the Honda's tag actually belonged on a Mercury, which signaled a possible registration violation. So Walker

2

initiated a traffic stop. The in-car audio and video system in the patrol vehicle he was using was non-operational and officers with the Kansas Highway Patrol did not use body cameras.

Walker approached the SUV on foot and noticed a driver, later identified as Thomas Kerrigan, and one female passenger. In speaking with Kerrigan, Walker observed that his eyes were watery, and his speech was soft, mumbled, and slurred. Walker also detected the odor of alcohol, so he requested to see Kerrigan's driver's license. Kerrigan, who suffered from arthritis, experienced dexterity issues while trying to remove his license from his wallet, a fact that did not go unnoticed by Walker. Walker inquired whether Kerrigan consumed any alcohol earlier that evening, and Kerrigan provided an affirmative response but declined to discuss the matter any further.

After reviewing Kerrigan's license, Walker asked him to exit the SUV and bring his license and registration documents to Walker's vehicle. Kerrigan complied and Walker noticed that his movements en route to the vehicle were very deliberate and focused. Once seated in Walker's car, Kerrigan shared that he suffered from physical disabilities that would prevent him from successfully completing any field sobriety tests that required physical movement. As a result, Walker requested Kerrigan complete two cognitive tests instead.

First, Walker directed Kerrigan to recite the alphabet beginning at the letter "D" and stopping at the letter "U." Kerrigan performed the task through mumbled and slurred speech but stopped at the letter "T" rather than proceeding on to "U" as directed. Next, Walker directed Kerrigan to count backwards from 67 to 43, which Kerrigan successfully completed. At that point, Kerrigan agreed to submit to a preliminary breath test (PBT) and produced a result of .117.

3

Based on the PBT result, Walker placed Kerrigan under arrest, advised him of his *Miranda* rights, and read the implied consent advisories required under Kansas law. Following the arrest, Kerrigan refused to answer any questions but agreed to provide another breath test using an Intoxilyzer 9000. That test yielded a result of .100. Kerrigan was then transported to the Riley County Jail.

The State charged Kerrigan with one count of driving under the influence. Prior to trial, Kerrigan filed a motion to suppress the Intoxilyzer evidence and argued he was entitled to such relief because Walker (1) did not have probable cause to arrest him, and (2) did not honor his request to speak with an attorney. On the same day, the State filed a *Jackson v. Denno* motion requesting that the district court find Kerrigan's admission that he consumed alcohol before driving was a knowing and voluntary statement.

The district court held a hearing on the motions during which Kerrigan and Walker had the opportunity to testify. The men provided varying accounts of the traffic stop. Kerrigan testified that, while still seated in his SUV, he told Walker, "I think I would like to call my attorney," and that Walker responded by saying Kerrigan was not entitled to an attorney. Walker, on the other hand, testified that Kerrigan simply made comments about an attorney, but never specifically requested to contact one.

Kerrigan further testified about the cognitive field sobriety tests and asserted that he understood Walker's instructions for the alphabet test to mean Kerrigan needed to stop before he reached the letter "U." On cross-examination, Walker stated he had no recollection of the precise language he used to explain that task. Because the patrol car did not have a functional audio or video recording system, there was no way to analyze the specific directions Kerrigan received.

Kerrigan also stated that he requested an attorney, for the second time, following the PBT but Walker simply responded that he could have an attorney when he had his

day in court. Kerrigan added that Walker took his cell phone and did not provide any alternative way for Kerrigan to call an attorney. Finally, Kerrigan believed that he asked to speak with an attorney at least one other time beyond the request in his car and the request following the PBT. In contrast, Walker testified that he had no specific recollection of Kerrigan asking for an attorney following the PBT, but that had he done so Walker would have allowed Kerrigan to use Walker's phone to make the necessary calls.

After hearing from both witnesses, the district court requested arguments from the parties. As for the first issue, the State asserted that Walker had probable cause to arrest Kerrigan because he observed his commission of a traffic violation and smelled the odor of alcohol emanating from the vehicle. Kerrigan also experienced difficulty when removing his driver's license from his wallet, had bloodshot and watery eyes, as well as slurred speech, and admitted to consuming alcohol. The State contended that those facts, coupled with Kerrigan's poor performance on the cognitive tests, provided Walker with reasonable suspicion to request a PBT and probable cause to arrest Kerrigan.

In addressing the matter of Kerrigan's request for an attorney, the State highlighted *Dumler v. Kansas Dept. of Revenue*, 302 Kan. 420, 354 P.3d 519 (2015), and argued that the case held there is no bright-line rule requiring a defendant to request an attorney after the testing. The State further asserted that while the possibility exists for such a request to be made before testing, that does not translate to mean the individual possesses the right to consult with an attorney prior to submitting to the breathalyzer test. Thus, Kerrigan's breath test results should not be suppressed.

Kerrigan argued that the State's reading of *Dumler* was flawed and therefore its reliance on it misplaced. He suggested the more accurate interpretation of *Dumler* was: (1) if the request made for an attorney during a breath test is denied, the appropriate remedy is suppression of the test results, and (2) an individual may request an attorney

5

prior to completing the breath test. Then applying *Dumler* to his own case, Kerrigan argued the evidence that he requested an attorney was uncontroverted because Walker failed to recall any specifics that suggested otherwise. Thus, because Walker never honored Kerrigan's requests to speak with an attorney, *Dumler* demanded suppression of his breath test results.

Turning to the probable cause determination, Kerrigan argued that Walker did not have reasonable suspicion to request a PBT because his observations of Kerrigan's red eyes, dexterity, and speech were subjective, and Kerrigan passed the two cognitive tests. According to Kerrigan, once that PBT was removed from the calculus, probable cause for the arrest did not exist. Kerrigan did not address the State's *Jackson v. Denno* motion.

The district court concluded that Walker possessed the requisite reasonable suspicion to request a PBT from Kerrigan, that the facts in their entirety provided probable cause for an arrest, and that Kerrigan's acknowledgment of alcohol consumption was knowing and voluntary and therefore admissible. Finally, after reviewing *Dumler*, the district court ordered Kerrigan's breathalyzer results suppressed. It explained that the evidence of Kerrigan's request for an attorney was uncontroverted and there was no corresponding evidence that Walker took any steps to honor that request.

The State filed a motion seeking reconsideration of the court's decision. At the hearing on that motion, it argued that the district court erred because *Dumler* interpreted a currently outdated section of the Kansas implied consent statute. Specifically, *Dumler* interpreted K.S.A. 2009 Supp. 8-1001(k)(10), which a 2018 amendment removed and replaced with different language in K.S.A. 2018 Supp. 8-1001(c)(1). It also asserted that the new amendment reflected "the *Dumler* decision on this type of statutory right to counsel no longer applies." Rather, the new statutory language only permitted an individual to ask for counsel once the breath test was already administered. According to the State, no statutory violation occurred under the amended statute because Kerrigan

6

testified that he requested counsel while sitting in his car and between the PBT and the breath test.

In response, Kerrigan argued that the 2018 amendment did not abrogate *Dumler*. To the contrary, both versions of the statute contain "an absolute right to counsel" following a breath test. He also asserted that the language of K.S.A. 2019 Supp. 8-1001(c)(1) does not allow law enforcement officers to ignore requests for counsel that are made before the test occurs. Put differently, the new language did not mark a proscription against requesting counsel before submitting to testing. Thus, the amendment did not have "any germane influence or impact on the *Dumler* findings."

The district court found the State's argument persuasive and deviated from its earlier ruling in order to deny Kerrigan's motion to suppress. It explained that Kerrigan's testimony evinced that he requested counsel before the officer administered the breath test and Walker provided similar testimony. The court did find it troubling that no such requests were memorialized in the officer's notes, particularly when the patrol car's audio and video equipment did not work. According to the court, there was no evidence that a request for counsel occurred after the breath test and that reality, coupled with the language change in the 2018 amendment, meant Kerrigan's statutory right to counsel was not violated.

Kerrigan's case proceeded to a bench trial on stipulated facts and the district court found Kerrigan guilty of driving under the influence because his breath test showed that his blood alcohol content exceeded .08.

Kerrigan timely appeals.

*The District Court properly denied Kerrigan's motion to suppress because the arresting officer did not violate Kerrigan's statutory right to counsel.*

Kerrigan contends the district court erred because any request for counsel must be honored no matter when it is uttered in relation to the breath test.

*Preservation*

After the district court denied his motion to suppress, Kerrigan waived his right to a jury trial and proceeded to a bench trial on stipulated facts. The stipulation included an objection to the admission of the breath test and, by doing so, preserved the issue for appeal. See *State v. Bogguess*, 293 Kan. 743, 747, 268 P.3d 481 (2012) (finding suppression issue preserved when appellant objected to admission of evidence in motion to suppress and then appellant agreed to a bench trial on stipulated facts).

*Standard of Review*

> "The standard of review for a district court's decision on a motion to suppress has two parts. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. But the court's ultimate legal conclusion is reviewed using a de novo standard. *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014). The appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). When the facts supporting the district court's decision on a motion to suppress are not disputed, the ultimate question of whether to suppress is a question of law over which the appellate court exercises unlimited review." *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

The parties agree the issue is whether K.S.A. 2019 Supp. 8-1001(c)(1) required Kerrigan to request counsel after the breath test was administered, and then have that request disregarded, in order to be entitled to suppression of his breath test results at trial.

Resolving this issue also involves statutory interpretation which raises a question of law over which we exercise unlimited review. *Jarvis v. Kansas Dept. of Revenue*, 312 Kan. 156, 159, 473 P.3d 869 (2020). "All Kansas courts use the same starting point when interpreting statutes: The Kansas Legislature's intent controls. To divine that intent, courts examine the language of the provision and apply plain and unambiguous language as written." 312 Kan. at 159. In doing so, courts must give "common words their ordinary meaning." *State v. Ryce*, 303 Kan. 899, 906, 368 P.3d 342 (2016). "If the Legislature's intent is not clear from the language, a court may look to legislative history, background considerations, and canons of construction to help determine legislative intent." *Jarvis*, 312 Kan. at 159.

*Analysis*

K.S.A. 2019 Supp. 8-1001(c)(1) states:

"(c) When requesting a test or tests of breath or other bodily substance other than blood or urine, under this section, the person shall be given oral and written notice that:

(1) There is no right to consult with an attorney regarding whether to submit to testing, but, after the completion of the testing, the person may request and has the right to consult with an attorney and may secure additional testing."

The State argues Kerrigan's desire to tether his claim to *Dumler* is erroneous because *Dumler* no longer controls in the wake of the 2018 amendment. Specifically, the State focuses on the changes between K.S.A. 2009 Supp. 8-1001(k)(10) and K.S.A. 2019 Supp. 8-1001(c). It asserts that the 2018 amendment "inserted a new advisory that

9

imposes a timing element for a defendant's request for counsel and removes the urgency element of when the additional testing needed to be performed."

In *Dumler*, Robert Dumler was stopped for committing a traffic violation and the officer ultimately arrested him for DUI. Dumler asked to speak with an attorney before completing a breath test, and the arresting officer conceded that he never honored Dumler's request. Dumler requested an administrative hearing with the Kansas Department of Revenue, where he argued that his statutory right to counsel was violated. The hearing officer affirmed his suspension, so Dumler petitioned to the district court. The district court also affirmed the suspension. Working his way up the chain, Dumler then appealed to this court, which similarly affirmed. Dumler petitioned our Supreme Court for review and his request was granted. 302 Kan. at 421-23.

The Kansas Supreme Court began with an overview of K.S.A. 2009 Supp. 8-1001. Though the statute revealed that an individual may not consult an attorney about the decision whether to submit to a breath test, K.S.A. 2009 Supp. 8-1001(k)(10) provided that a person had the right to consult with an attorney after the test was completed. The court then turned to the question surrounding the timing of the request and concluded that "[t]he advisory required under K.S.A. 2009 Supp. 8-1001(k)(10) states that the consultation right accrues 'after the completion of the testing.' But it does not say that a request to invoke that right of consultation must await the completion of testing." *Dumler*, 302 Kan. at 426. Furthermore, the court explained that K.S.A. 2009 Supp. 8-1001(k)(10) affirmatively stated that an individual had the right to consult with an attorney after testing and that this right was "not conditioned upon the person making a post-testing request." 302 Kan. at 426. The court concluded its statutory analysis by noting: "The State would apparently expect a layperson to intuit that the advisory actually means that, after the testing, the person has the right to request that he or she be allowed to consult with an attorney. We decline to contort the statutory language in that manner." 302 Kan. at 426. Because Dumler had requested an attorney before his

10

preliminary breath test and the State did not honor that request, the court held the Intoxilyzer results must be suppressed. 302 Kan. 430.

The State cites *Jarvis v. Kansas Dept. of Revenue,* 56 Kan. App. 2d 1081, 1093, 442 P.3d 1054 (2019), *aff'd* 312 Kan. 156, 473 P.3d 869 (2020), to support its position. In *Jarvis*, this court considered the effect of a statutory amendment on a prior Kansas Supreme Court decision. That prior decision, *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 176 P.3d 938 (2008), explained that the exclusionary rule did not apply in a driver's license suspension proceeding. In 2016, the Kansas Legislature amended K.S.A. 8-1020(p), which clarified that a district court could consider constitutional issues when reviewing a driver's license suspension, even if the constitutional issue was not raised in front of the agency or included in the petition for review. This court determined that the amendment abrogated *Martin* because, under *Martin* and prior to the amendment, "[t]he statute did not provide for the district court to consider and decide the 'lawfulness of the law enforcement encounter.'" *Jarvis*, 56 Kan. App. 2d at 1096.

Specifically, the State directs this court to the following language from *Jarvis*:

> "When the Legislature revises an existing law, the court presumes the Legislature intended to change the law as it existed before the amendment. Courts generally presume that the Legislature acts with full knowledge about the statutory subject matter, including prior and existing law and judicial decisions interpreting the same. [Citation omitted.]" 56 Kan. App. 2d at 1093.

Other Kansas courts have affirmed this principle. In *Stueckemann v. City of Basehor*, 301 Kan. 718, 745, 348 P.3d 526 (2015) (citing *Graham v. Herring*, 297 Kan. 847, 860, 305 P.3d 585 [2013]), the Kansas Supreme Court reiterated "that the 'legislature's revision of existing law creates [a] presumption that [the] legislature intended to change preamendment law.'" The presumption is more persuasive "where the amendment contains a radical change to a statute's phraseology." *Stueckemann*, 301 Kan.

at 745. See also *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1000, 348 P.3d 602 (2015) (explaining that amendments may abrogate existing law even when the Legislature does not invoke specific, "talismanic words"). But the presumption may be rebutted and "is not to be rigidly applied." *Confinement Specialists, Inc. v. Schlatter*, 6 Kan. App. 2d 1, 5, 626 P.2d 223 (1981); see also 6 Kan. App. 2d 1, Syl. ¶ 1 ("Generally, there is a presumption that a change in the language of a statute results from a legislative purpose to change its effect, but this presumption may be strong or weak, according to circumstances, and maybe wanting altogether in a particular case.").

The *Stueckemann* court found that the statutory amendment was a radical change in phraseology because the statute (1) "now expressly speaks when annexation statutes always had been silent on reasonableness as a basis for challenge and scope of judicial review," and (2) the amendment mandated that courts use a specific factor when determining reasonableness. 301 Kan. at 745. As in *Stueckemann*, the 2018 amendment to K.S.A. 8-1001 now expressly speaks to requests, whereas the word "request" was absent from the prior language. As the State argues, "[t]he advisory now clarifies that a person's request for an attorney is authorized after the completion of testing, essentially addressing the requirement that the *Dumler* court found was missing." The State appears to suggest the Kansas Legislature expressed its intent to limit requests for counsel to post-test requests by adding the words "may request" following the clause "after the completion of the testing." According to this argument, the Kansas Legislature did this with full knowledge of the statute's predecessor and the *Dumler* decision.

However, in an early case related to this principle, the Kansas Supreme Court explained:

> "'This presumption is fairly strong in the case of an isolated, independent amendment, but is of little force in the case of amendments adopted in a general revision or codification of

the laws, as in such case the change of phraseology may be due to a rearrangement of the statutes or to a desire to improve the style.' [Citation omitted.]" *Hauserman v. Clay County*, 89 Kan. 555, 558, 132 P. 212 (1913).

The 2018 amendment was not isolated or independent. Rather, the entirety of K.S.A. 2018 Supp. 8-1001(c) was added, and the subsection imported similar provisions from K.S.A. 2017 Supp. 8-1001(k). Portions of the statute were rearranged and rewritten. Accordingly, even if the inclusion of "may request" is a radical departure of phraseology, the presumption that the amendment overturns *Dumler* loses force because the amendment was not isolated or independent. See *Confinement Specialists, Inc. v. Schlatter*, 6 Kan. App. 2d 1, 5-7, 626 P.2d 223 (1981) (rejecting the presumption when the amendment occurred as part of the Kansas Legislature's "massive revision of the Kansas Code of Civil Procedure in 1963").

Moreover, the amendments changed the notice language and did not undermine the statutory right to counsel discussed in *Dumler*. Both K.S.A. 2019 Supp. 8-1001(c)(1) and K.S.A. 2009 Supp. 8-1001(k)(10) indicate that an individual has the right to counsel following a breath test. See K.S.A. 2019 Supp. 8-1001(c)(1) (noting "has the right to consult with an attorney"); K.S.A. 2009 Supp. 8-1001(k)(10) (noting "the person has the right to consult with an attorney"). The *Dumler* court found that the right was mandatory and that it was "not conditioned upon the person making a post-testing request." 302 Kan. at 426. The amended language may be read to be conditioned upon a person making a post-testing request because the language explaining the right is preceded by "but, after the completion of the testing." K.S.A. 2019 Supp. 8-1001(c)(1). Yet Kerrigan argues for an alternative reading of the new language.

Kerrigan argues the Kansas Legislature could have easily written K.S.A. 2019 Supp. 8-1001(c)(1) to be clear that the statutory right to an attorney is available only if the request follows a breath test. For example, he says, the statute could have been

phrased in two ways: (1) "*Only* after the completion of testing *shall* a person have the right to request and have the right to consult with an attorney," or (2) "after the completion of the testing, the person has the right to consult with an attorney which *must* be requested after completion of the testing." Put differently, the new language does not show that an individual cannot ask for counsel prior to testing. Nor does it read that if they ask for counsel before testing, then they are not entitled to it.

Kansas courts have found similar arguments persuasive. For example, in *Stanley v. Sullivan*, 300 Kan. 1015, 1020-22, 336 P.3d 870 (2014), the Kansas Supreme Court reversed this court's decision that the phrase "this section" in K.S.A. 2013 Supp. 59-29a24(d) was ambiguous. This court had found that it was unclear whether the phrase applied to the entirety of K.S.A. 2013 Supp. 59-29a24 or only K.S.A. 2013 Supp. 59-29a24(c), and, based on the ambiguity, had turned to legislative history to determine subsection (d)'s meaning. The Kansas Supreme Court disagreed, explaining:

> "Clearly, if the legislature had intended that subsection (d) refer only to subsection (c), the legislature could have and probably would have drafted the exception to read 'The provisions of the preceding subsection shall not apply to a writ of habeas corpus' or 'The provisions of subsection (c) shall not apply to a writ of habeas corpus.'" *Stanley*, 300 Kan. at 1020.

See also *State v. Trautloff*, 289 Kan. 793, 798, 217 P.3d 15 (2009) ("The legislature could have written the statute to define an aggravated habitual sex offender as an offender convicted of two prior crimes. The legislature instead chose to define the aggravated habitual sex offender as one who is convicted on at least two prior conviction events."); *The Salina Journal v. Brownback*, 54 Kan. App. 2d 1, 19, 394 P.3d 134 (2017) ("Had the legislature intended to treat record requests differently depending on the application process used by public agencies, the legislature could have easily included such language in the personnel records exception. But, it did not."); *In re J.L.B.*, 44 Kan. App. 2d 755, 760, 241 P.3d 114 (2010) ("If the legislature wished to include a definition for 'prior

14

adjudication' similar to that set forth for 'prior conviction' under K.S.A. 21-4710, it could have easily done so under the Juvenile Code."); *State v. Chavez*, No. 115,602, 2017 WL 3321375, at *6 (Kan. App. 2017) (unpublished opinion) (explaining two drafting adjustments that the Kansas Legislature could have made in order for the State's argument to be supported, but rejecting the State's argument because it was "contrary to the most fundamental rule in statutory interpretation—that the intent of the legislature, as shown through the plain language of the statutes, governs"); contra *In re W.H.*, 274 Kan. 813, 822, 57 P.3d 1 (2002) ("Our legislature has established in painstaking detail, a comprehensive sentencing scheme, essentially complete as written. In the face of such detail, silence fails to imply the existence of an alternative not expressed.").

The plain language of K.S.A. 2019 Supp. 8-1001(c)(1) reflects that a person has the right to be told that they may request an attorney after a breath test has been administered, but the language does not convey that an earlier request should not be honored. As Kerrigan notes, the statute "does not limit the person's ability to request counsel until after testing; instead, it gives discretion to the person to request an attorney after testing and remains silent as to whether the request can be made before the completion of testing." This court may not interpret a statute to include language that is absent. See *State v. Breedlove*, 285 Kan. 1006, 1015, 179 P.3d 1115 (2008) (quoting *Steffes v. City of Lawrence*, 284 Kan. 380, Syl. ¶ 2, 160 P.3d 843 [2007]) ("When language is plain and unambiguous, there is no need to resort to statutory construction. An appellate court merely interprets the language as it appears; it is not free to speculate and cannot read into the statute language not readily found there."); *In re Tax Protest of United Ag Services*, 37 Kan. App. 2d 902, 913, 159 P.3d 1050 (2007) ("A statute should not be read to add language that is not found in it.").

The State's interpretation of K.S.A. 2019 Supp. 8-1001(c)(1) is internally inconsistent:  the right to consult an attorney is not conditional upon the timing of the request—the statutory right is always present. Under the provision, it is only relevant that

15

a request was made, the rest of the advisory already informs that one cannot implement the attorney consultation until after testing. A plausible explanation for the provision's use of "after" is to drive home this fact, but not to suggest a pre-testing request to consult an attorney would somehow be rendered void or would not be enough to trigger that right.

In addition, in considering both arguments presented, it becomes clear that, as drafted, K.S.A. 2019 Supp. 8-1001(c)(1) is perhaps ambiguous because the new language is uncertain about whether a pre-breath test request must be honored. Put differently, the plain language does not state that a pre-breath test invocation must be honored, but it certainly does not state that honoring it is prohibited. See Black's Law Dictionary 100 (11th ed. 2019) (defining "ambiguity" as "[d]oubtfulness or uncertainty of meaning or intention, as in a contractual term or statutory provision . . . "). Accordingly, we must apply the rule of lenity. See *State v. Braun*, 47 Kan. App. 2d 216, 217, 273 P.3d 801 (2012) ("A special rule, the rule of lenity, guides us when determining the meaning of an ambiguous criminal statute."); *State v. Trevitt*, No. 122,168, 2020 WL 6811983, at *4 (Kan. App. 2020) (unpublished opinion) (adopting appellant's reading of the statute even though it was "not the most natural reading" because "it [was] at least a plausible one given the statutory context . . . and would not 'contravene the statute's plain meaning'"); *State v. Kelly*, 14 Kan. App. 2d 182, 186, 786 P.2d 623 (1990) (noting the rule of lenity applies to K.S.A. 8-1001 because of its punitive nature). The rule of lenity requires that a statute be construed in favor of the accused. *State v. Terrell*, 315 Kan. 68, 72-73, 504 P.3d 405 (2022). Moreover, the rule of lenity applies when a statute is silent on a matter; here, the statute is silent on pre-breath-test requests. See 315 Kan. at 72-73.

Construing K.S.A. 2019 Supp. 8-1001(c)(1) in favor of Kerrigan means that the statute requires pre-breath-test requests for counsel to be honored. Because the request was not honored here the appropriate remedy is a suppression of the breath test. See *Kelly*, 14 Kan. App. 2d at 191-92. Accordingly, the district court erred when, upon the

motion to reconsider, it denied Kerrigan's motion to suppress the Intoxilyzer results. Kerrigan's case is reversed and remanded for the district court to analyze the parties' arguments through the lens of the appropriate standard.

Reversed and remanded.

* * *

GARDNER, J., dissenting: I respectfully dissent, disagreeing with my colleagues about the plain meaning of K.S.A. 2019 Supp. 8-1001(c)(1). The court found that Thomas Kerrigan requested counsel before the officer administered the Intoxilyzer breath test and that no evidence showed he requested counsel after that breath test. This fact is supported by substantial evidence and is not challenged on appeal. So the only question presented is a question of law—does the statute require the officer to honor a request for counsel made before the breath test is completed?

*Dumler v. Kansas Dept. of Revenue*, 302 Kan. 420, 354 P.3d 519 (2015), examined a 2009 statute that provided that before a breath test is administered,

> "the person shall be given oral and written notice that . . . after the completion of the testing, the person has the right to consult with an attorney and may secure additional testing, which, if desired, should be done as soon as possible and is customarily available from medical care facilities willing to conduct such testing." K.S.A. 2009 Supp. 8-1001(k)(10).

Based on that language, *Dumler* found that "[t]he advisory required under K.S.A. 2009 Supp. 8-1001(k)(10) states that the consultation right accrues 'after the completion of the testing.' But it does not say that a request to invoke that right of consultation must await the completion of testing." 302 Kan. at 426. Thus, it held that

17

"the statute limits *when* a person may actually communicate with a lawyer. 2012 WL 4679128, at *3. For instance, a person has no right to consult with counsel before deciding whether to take the requested alcohol testing. But after the test, a person has the unrestricted right to consult with an attorney, period. Given that the district court apparently applied an incorrect legal standard on the question of whether Dumler's post-testing right to counsel was violated, a remand would be in order." 302 Kan. at 427.

Nothing in K.S.A. 2009 Supp. 8-1001 stated when the request for counsel had to be made—only when it had to be honored. So the court found that Dumler's pre-test request for counsel had to be honored after the test.

Apparently in response to the 2015 *Dumler* decision, the Legislature in 2018 changed the statute. It revoked K.S.A. 2009 Supp. 8-1001(k)(10) and replaced it with different language in K.S.A. 2019 Supp. 8-1001(c)(1) that applies here. This statute requires an officer requesting a breath test to notify the person that: "There is no right to consult with an attorney regarding whether to submit to testing, but, after the completion of the testing, the person may request and has the right to consult with an attorney and may secure additional testing." K.S.A. 2019 Supp. 8-1001(c)(1). Unlike the previous statute, this statute speaks both to when the person may request counsel and to when the officer must honor that request—"after the completion of the testing." That is what the plain language of the statute says. A request to invoke the right of consultation must await the completion of testing.

The 2019 statute is not ambiguous. The rule of lenity has no application here. That a statute could be drafted differently or even more clearly does not mean its language is ambiguous, although every ambiguous statute could necessarily be worded more clearly. Nor does the fact that persons disagree as to the meaning of a statute, as here, make it ambiguous. *Marshall v. Kansas Med. Mut. Ins. Co.*, 276 Kan. 97, 111, 73 P.3d 120 (2003) (A term or phrase in a statute, contract, or other writing is not automatically ambiguous simply because some disagree about its interpretation). See, e.g., *Leaf*

18

*Funding, Inc. v. Simmons Medical Clinic*, 54 Kan. App. 2d 387, 392, 398 P.3d 866 (2017) (noting that parties argued for different interpretations of a statute but neither claimed that statute was ambiguous).

Ambiguity arises only if "the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning." *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 693, 840 P.2d 456 (1992); *Kincaid v. Dess*, 48 Kan. App. 2d 640, 647, 298 P.3d 358 (2013) ("A contract is ambiguous when the words . . . may be understood in two or more ways."). A court will not strain to find an ambiguity where, in common sense, there is none. See *Iron Mound v. Nueterra Healthcare Management*, 298 Kan. 412, 418, 420, 313 P.3d 808 (2013).

Our primary aim when interpreting statutes is to give effect to the Legislature's intent, expressed through the statutory language it adopted. *State v. Spencer Gifts*, 304 Kan. 755, Syl. ¶ 2, 374 P.3d 680 (2016). We thus follow the statute's plain language—we cannot ignore statutory requirements and we give ordinary words their ordinary meanings. 304 Kan. 755, Syl. ¶ 3. It is not the courts' function to add to *or take away from* the language of a statute. "A statute should not be read to add that which is not contained in the language of the statute or to read out what, as a matter of ordinary language, is included in the statute." *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, Syl. ¶ 6, 154 P.3d 494 (2007). So we are not at liberty to decide that it would be better for the statutory advisory to require an officer to honor a person's request for counsel made before, during, or after the completion of a breath test.

The plain language of the statute says that after the completion of the testing the person may request to consult with an attorney. It includes no similar language as to any earlier request. Thus, although an officer may choose to honor a request made before or during the breath test to consult with an attorney, an officer has no statutory duty to do so. Because K.S.A. 2019 Supp. 8-1001(c)(1) is unambiguous, our inquiry should begin

19

and end with its text. See *National Assn. of Mfrs. v. Department of Defense*, 583 U.S. __, 138 S. Ct. 617, 631, 199 L. Ed. 2d 501 (2018).

But even if the statute is ambiguous, the presumption applies that when the Legislature changes the law, it intends to change not only the prior law but also court decisions interpreting it:

> "When the Legislature revises an existing law, the court presumes the Legislature intended to change the law as it existed before the amendment. Courts generally presume that the Legislature acts with full knowledge about the statutory subject matter, including prior and existing law and judicial decisions interpreting the same. [Citations omitted.]" *Jarvis v. Kansas Dept. of Revenue*, 56 Kan. App. 2d 1081, 1093, 442 P.3d 1054 (2019), *aff'd* 312 Kan. 156, 473 P.3d 869 (2020).

As the majority notes, the Kansas Supreme Court has fully affirmed this principle. See e.g., *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1000, 348 P.3d 602 (2015); *Stueckemann v. City of Basehor*, 301 Kan. 718, 745, 348 P.3d 526 (2015) (citing *Graham v. Herring*, 297 Kan. 847, 860, 305 P.3d 585 [2013]).

This presumption, as applied here, means that when the Legislature revoked K.S.A. 2009 Supp. 8-1001(k)(10) and replaced it with K.S.A. 2019 Supp. 8-1001(c)(1), it intended to work some change in the effect of the statute. Yet the majority finds the presumption inapplicable because the 2019 amendment was not isolated or independent, relying on the early precedent of *Hauserman*:

> "'This presumption is fairly strong in the case of an isolated, independent amendment, but is of little force in the case of amendments adopted in a general revision or codification of the laws, as in such case the change of phraseology may be due to a rearrangement of the statutes or to a desire to improve the style.' [Citation omitted.]" *Hauserman v. Clay County*, 89 Kan. 555, 558, 132 P. 212 (1913).

20

To the contrary, the statutory change here was independent, not part of a larger general revision, an overall change in phraseology, or stylistic rearrangement. Compare *Confinement Specialists, Inc. v. Schlatter*, 6 Kan. App. 2d 1, 5-7, 626 P.2d 223 (1981) (rejecting the presumption when the amendment was part of Legislature's "massive revision of the Kansas Code of Civil Procedure in 1963"). This change was isolated and content based. Thus, we should find that the Legislature, with full knowledge of the statute's predecessor and the *Dumler* decision, by adding the words "may request" following the clause "after the completion of the testing," expressed its intent to limit requests for counsel to post-test requests.

Nothing in that conclusion undermines a person's statutory right to counsel after completion of a breath test. See K.S.A. 2019 Supp. 8-1001(c)(1) (noting "has the right to consult with an attorney"); K.S.A. 2009 Supp. 8-1001(k)(10) (noting "the person has the right to consult with an attorney").

For those reasons I respectfully dissent.